UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, NATIONAL FEDERATION OF THE BLIND, INC., NATIONAL FEDERATION OF THE BLIND OF MASSACHUSETTS, INC., ADRIENNE ASCH, RICHARD DOWNS, THERESA JERALDI and PHILIP OLIVER,<br><br>Plaintiffs,<br><br>v.<br><br>E*TRADE ACCESS, INC. and E*TRADE BANK,<br><br>Defendants. | C.A. No.: 03 11206-MEL |

## AMENDED COMPLAINT

### NATURE OF THE CASE

1. Plaintiff Commonwealth of Massachusetts, by and through its Attorney General, Thomas Reilly, and Plaintiffs, the National Federation of the Blind, Inc. and the National Federation of the Blind of Massachusetts, Inc. (collectively "Organizational Plaintiffs"), and Adrienne Asch, Richard Downs, Theresa Jeraldi and Philip Oliver, individuals who are legally blind (collectively "Individual Plaintiffs"), by their undersigned counsel, bring this complaint against the Defendants E*Trade Access, Inc. and E*Trade Bank, individually and jointly, for (1) E*Trade Bank's failure to offer E*Trade banking services, the services of a public accommodation, through ATMs that are accessible to blind people; (2) the Defendants' operation and control, or operation, control and leasing, of inaccessible ATMs that are public

accommodations, that offer the services of a public accommodation, and that are located in places of public accommodation, in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12182 and 12183 and the regulations promulgated thereunder, 28 C.F.R. Part 36.101 *et seq.*, the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, §§ 92A and 98, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103.

Plaintiffs seek injunctive relief requiring Defendants to make accessible the existing and newly installed ATMs through which E*Trade Bank offers banking services, or that they operate and control, or that they operate, control and lease, so that banking services that are available to a sighted user of these ATMs are similarly independently available to blind people, of whom there are approximately 1.1 million nationwide, including approximately 35,000 in Massachusetts. Plaintiffs also seek compensatory and punitive damages as a result of Defendants' knowing, intentional and deliberate disregard of the law.

## JURISDICTION AND VENUE

2. This action is authorized by 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 12188. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, since each Defendant transacts business in the Commonwealth, maintains facilities in the Commonwealth and the claims against each Defendant arise out of the transaction of business in Massachusetts. The Court also has supplemental jurisdiction over the state law claims at issue pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), since each Defendant, as a corporation, is subject to personal jurisdiction in this District because a

substantial part of the events giving rise to this action occurred and continue to occur in this District.

## PARTIES

4. The Commonwealth of Massachusetts, represented by the Attorney General, brings this action in the public interest. The Attorney General's principal office is located at One Ashburton Place, Boston, Massachusetts. The Attorney General is authorized to bring this action on behalf of the Commonwealth pursuant to Mass. Gen. Laws. ch. 151B, § 5, in addition to other statutory and common law authority to bring legal actions in the public interest. *See, e.g.*, Mass. Gen. Laws ch. 12, § 10.

5. The National Federation of the Blind ("NFB" or "Federation"), the leading national organization of blind persons, is a non-profit corporation duly organized under the laws of the District of Columbia with its principal place of business in Baltimore, Maryland. It has affiliates in all 50 states, Washington, D.C. and Puerto Rico. The vast majority of the Federation's approximately 50,000 members are blind persons and therefore members of the protected class of disabled persons under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA contained in 28 C.F.R. §§ 36.101, *et seq.*, the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, § 98, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103. The Federation is widely recognized by the public, Congress, executive agencies of government and the courts as a collective and representative voice on behalf of blind Americans and their families. The purpose of the NFB is to promote the general welfare of the blind by (1) assisting the blind in their efforts to integrate themselves into society on terms of equality and (2) removing barriers and changing social attitudes, stereotypes and

mistaken beliefs sighted and blind persons hold concerning the limitations created by blindness that result in the denial of opportunity to blind persons in virtually every sphere of life. The NFB and many of its members have long been actively involved in promoting adaptive technology for the blind, so that blind persons can live and work independently in today's technology-dependent world. NFB members reside throughout the United States, including the Commonwealth of Massachusetts, and many of its members would use the ATMs and the services offered by Defendants if they were made independently usable by the blind.

6. The National Federation of the Blind of Massachusetts, Inc. ("NFB-Massachusetts"), an affiliate of the NFB, is a non-profit corporation duly organized under the laws of the Commonwealth of Massachusetts, with its administrative office located in Somerset, Massachusetts. NFB-Massachusetts currently has eight local chapters and approximately three hundred members. All members of NFB-Massachusetts are also members of NFB. NFB-Massachusetts members reside and work throughout the Commonwealth and many members would use the ATMs offered by Defendants if they were made independently usable by the blind.

7. Adrienne Asch, a blind resident of Cambridge, Massachusetts, is a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA contained in 28 C.F.R. §§ 36.101, *et seq.*, the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, § 98, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103. Ms. Asch is a professor of Bioethics at Wellesley College. She would like to use the ATMs offered by Defendants if they were made independently usable by the blind, and to have the choice to be an E*Trade Bank account holder if that bank's services were independently usable by the blind.

Case 1:03-cv-11206-NMG   Document 9   Filed 07/22/03   Page 5 of 15

8. Richard Downs, a blind resident of Stoughton, Massachusetts, is a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA contained in 28 C.F.R. §§ 36.101, *et seq.*, the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, § 98, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103. Mr. Downs is employed by Ferguson Industries, a sheltered workshop in Stoughton, Massachusetts. Mr. Downs would like to use the ATMs offered by Defendants if they were made independently usable by the blind, and to have the choice to be an E*Trade Bank account holder if that bank's services were independently usable by the blind.

9. Theresa Jeraldi, a blind resident of Watertown, Massachusetts, is a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA contained in 28 C.F.R. §§ 36.101, *et seq.*, the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, § 98, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103. Ms. Jeraldi is a retired employee of the Office of Civil Rights of the United States Department of Education. She would like to use the ATMs offered by Defendants if they were made independently usable by the blind, and to have the choice to be an E*Trade Bank account holder if that bank's services were independently usable by the blind.

10. Philip Oliver, a blind resident of Leominster, Massachusetts, is a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA contained in 28 C.F.R. §§ 36.101, *et seq.*, the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, § 98, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103. Mr. Oliver is employed by the Massachusetts Commission for the Blind and would like to use the ATMs offered by Defendants if they were made independently usable by the blind, and to

have the choice to be an E*Trade Bank account holder if that bank's services were independently usable by the blind.

11.  E*Trade Access, Inc. ("E*Trade Access"), an Oregon corporation with its principal place of business in Arlington, Virginia, is a subsidiary of E*Trade Bank. E*Trade Access owns, operates, controls, and/or leases ATMs under the E*Trade name.

12.  E*Trade Bank, a federally chartered savings bank with its principal place of business in Arlington, Virginia, is a wholly-owned subsidiary of E*Trade Financial Corporation. E*Trade Bank is a public accommodation pursuant to 42 U.S.C. § 12181(7)(f) that offers banking services, including the withdrawal of funds, the making of deposits, and the verification of deposits, at over 15,000 ATMs owned and/or operated under the E*Trade name across the United States, including more than 600 in Massachusetts.

13.  E*Trade Access, Inc. and E*Trade Bank (collectively "E*Trade") are subsidiaries of E*Trade Group Inc., a Delaware corporation with its principal place of business in Menlo Park, California.

## FACTS

14.  E*Trade boasts a fleet of more than 15,000 ATMs nationwide. Its ATMs offer to the public convenient access to common banking transactions, including cash withdrawals and deposits, at retail sites which include restaurants, convenience stores and gas stations located in all 50 states and the District of Columbia.

15.  E*Trade Access holds legal title to only a few thousand of the more than 15,000 ATMs it operates within its network (approximately 17 in Massachusetts) (the "E*Trade-owned

ATMs"). After demand and as a result of negotiation, E*Trade Access has agreed to make the E*Trade Access-owned ATMs accessible to the blind.

16.  E*Trade operates and controls the balance of ATMs in its fleet at the site of various retail merchants, pursuant to a variety of contractual arrangements with the merchants. On information and belief, E*Trade leases back from merchants some of the ATMs it operates and controls, including some of the ATMs it operates and controls within Massachusetts (ATMs that E*Trade operates and controls, or operates, controls and leases are referred to as "E*Trade-operated ATMs").  E*Trade has not and does not intend to make E*Trade-operated ATMs accessible to the blind.

17.  E*Trade Bank offers its banking services, including fee-free transactions to E*Trade Bank account holders, through E*Trade-owned and E*Trade-operated ATMs.

18.  E*Trade represents to the public, just as it does with the E*Trade-owned ATMs, that each of the E*Trade-operated ATMs is an E*Trade ATM.  Each E*Trade-operated machine also (a) displays the E*Trade logo, and (b) offers fee-free transactions to E*Trade Bank account holders.  In addition, E*Trade Bank's website does not distinguish between E*Trade-owned and E*Trade-operated ATMs, stating, "With more than 15,000 ATMs, we operate the second largest network of ATMs in the United States."

19.  On information and belief, E*Trade plans to expand the services at E*Trade-operated ATMs to include not only banking services, but also access to the brokerage and other financial services of E*Trade Financial Corporation, a wholly-owned subsidiary of E*Trade Group.

20. E*Trade Bank; each E*Trade-operated ATM; each of the locations in which those ATMs are found; and the network of E*Trade-operated ATMs are all public accommodations as defined by Title III of the ADA, 42 U.S.C. § 12181(7), the regulations implementing the ADA contained in 28 C.F.R. §§ 36.101, *et seq.*, and the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, § 92A.

21. The banking services offered by E*Trade Bank through E*Trade-operated ATMs in Massachusetts constitute a program or activity under Article 114 of the Amendments to the Massachusetts Constitution, Mass. Const. amend. CXIV, and the services and facilities of a public accommodation under 42 U.S.C. § 12181.

22. E*Trade deprives blind people of the opportunity to independently engage in financial transactions on the same terms as sighted people. E*Trade-operated ATMs are inaccessible because they use computer screen text prompts that are undetectable to blind people to guide customers through banking transactions. These computer screen text prompts are not translated into a medium accessible to the blind, such as audio output.

23. Currently, if a blind person enters the wrong personal identification number ("PIN") into an E*Trade-operated ATM, the ATM may retain his or her card. Also, a blind person who presses an incorrect function key on an E*Trade-operated ATM has no way of knowing that he or she has made a mistake in the transaction.

24. As a result of this inaccessibility, the Individual Plaintiffs and members of the Organizational Plaintiffs, unlike persons without visual impairments, are not able to independently use E*Trade-operated ATMs.

25. E*Trade ATMs threaten blind people with loss of their private information. Blind people who wish to use an E*Trade-operated ATMs have no choice but to repeatedly reveal their private PINs to others to complete an ATM banking transaction.

26. As a result, unlike persons who are not blind, the Individual Plaintiffs and members of the Organizational Plaintiffs who wish to use an E*Trade ATM are not able to maintain the security of their private PINs.

27. Although some E*Trade-operated ATMs have Braille keypads and labels, this feature is not an effective accommodation under the ADA:

    a. Not all persons who are blind read Braille. In fact, current national figures estimate a Braille literacy rate of only 15% among persons who are blind; and

    b. Braille keypads and labels are static and do not provide sequential computer screen instructions or any information about the contents of any given screen.

28. The only effective means to make E*Trade-operated ATMs accessible to blind people is through voice guidance technology. Voice guidance technology allows a blind person to plug a personal headphone into a universal audio jack and hear the step-by-step instructions as they appear on the ATM screen. Voice guidance technology orients a blind person to the features of an ATM, the operational options of the machine, and the details for each function of the machine. Voice guidance technology also provides a verification mechanism through which a blind person may confirm that a number he or she has entered on the keypad is the number he or she intended to enter, or that the transaction chosen was the intended transaction.

29. Voice guided technology has been widely used in a variety of other contexts for decades and has been readily available for application to ATMs. It has long been affordable and

9

available as an option with the purchase of new ATMs or as an upgrade for existing ATMs, and competitors of the Defendants have offered voice guidance technology at ATMs they own, operate, and/or lease. Moreover, Defendants are in the process of implementing voice guidance technology for their E*Trade-owned ATMs.

30. Without injunctive relief, Individual Plaintiffs and members of the Organizational Plaintiffs will continue to be unable to independently use E*Trade-operated ATMs in violation of their rights under the ADA, the Massachusetts Public Accommodations Act, and the Massachusetts Equal Rights Act.

## COUNT I

## (Violation of the ADA's Full and Equal Enjoyment of Services Mandate)

31. The allegations contained in the previous paragraphs are incorporated by reference.

32. Plaintiffs Adrienne Asch, Richard Downs, Theresa Jeraldi and Philip Nathaniel Oliver and Organizational Plaintiffs' members are legally blind and recognized as a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA contained in 28 C.F.R. §§ 36.101, *et seq.*

33. E*Trade Bank is a public accommodation, and each Defendant operates or operates and leases, and operates within, a place of public accommodation as defined by Title III of the ADA, 42 U.S.C. § 12181(7)(F).

34. Each Defendant, in violation of 42 U.S.C. § 12182(a), has failed to make its ATM banking services fully accessible and independently usable by individuals who are blind.

## COUNT II

### (Violation of ADA's Reasonable Modification Mandate)

35. The allegations contained in the previous paragraphs are incorporated by reference.

36. Each Defendant, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), has failed to make reasonable modifications (by failing to modify policies, practices and procedures) necessary to make its ATM banking services fully accessible and independently usable by individuals who are blind.

37. Modifying its policies, practices and procedures to afford blind persons full accessibility and independent use of ATMs the Defendants operate or operate and lease would not fundamentally alter the nature of Defendants' banking services.

## COUNT III

### (Violation of the ADA's Auxiliary Aids and Services Mandate)

38. The allegations contained in the previous paragraphs are incorporated by reference.

39. Defendants, in violation of the auxiliary aids and services provision of the ADA 42 U.S.C. §12182(b)(2)(A)(iii), have failed to make their ATM banking services fully accessible and independently usable by blind persons.

40. Providing auxiliary aids and services to make ATMs the Defendants operate or operate and lease, and through which E*Trade Bank offers its banking services, accessible to and independently usable by blind persons would neither fundamentally alter the nature of Defendants' banking services nor result in an undue burden.

## COUNT IV

### (Violation of the ADA's Communication Barrier Removal Mandate)

41. The allegations contained in the previous paragraphs are incorporated by reference.

42. Each Defendant, in violation of 42 U.S.C. §12182 (b)(2)(A)(iv), has failed to remove communication barriers from the ATMs it operates or operates and leases and through which E*Trade Bank offers its banking services.

43. Installing voice guidance technology to make ATMs the Defendants operate or operate and lease, and through which E*Trade Bank offers its banking services, accessible to and independently usable by persons who are blind is readily achievable.

## COUNT V

### (Violation of the ADA's New Construction Mandate)

44. The allegations contained in the previous paragraphs are incorporated by reference.

45. Each Defendant, in violation of 42 U.S.C. §12183, operates or operates and leases, or offers banking services through, ATMs that were installed after January 26, 1993 and are not readily accessible to and independently usable by blind persons.

46. Defendants are required to comply with the standards for accessible design set forth in the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). 28 C.F.R. § 36.406. ADAAG Section 4.34.5 requires that "[i]nstructions and all information for use [in ATM's] shall be made accessible to and independently usable by persons with vision impairments."

47.     Each Defendant, in violation of 42 U.S.C. §12183 and 28 C.F.R. § 36.406, has failed to make its ATM banking services fully accessible and independently usable by blind persons.

## COUNT VI

### (Violation of the Massachusetts Public Accommodations Act)

48.     The allegations contained in the previous paragraphs are incorporated by reference.

49.     Plaintiffs Adrienne Asch, Richard Downs, Theresa Jeraldi and Philip Oliver and Organizational Plaintiffs' members are legally blind and recognized as a protected class under Mass. Gen. Laws ch. 272, § 98.

50.     Each Defendant operates and controls, and operates within, a place of public accommodation as defined by Mass. Gen. Laws ch. 272, § 92A.

51.     Each Defendant, in violation of Mass. Gen. Laws ch. 272, § 98, has failed to make its ATM banking services fully accessible and independently usable by individuals who are blind.

## COUNT VII

### (Violation of the Massachusetts Equal Rights Act)

52.     The allegations contained in the previous paragraphs are incorporated by reference.

53.     Plaintiffs Adrienne Asch, Richard Downs, Theresa Jeraldi and Philip Nathanial Oliver and Organizational Plaintiffs' members are legally blind and are recognized as a protected class under Mass. Const. amend. CXIV and under the Massachusetts Equal Rights Act, Mass.

Gen. Laws ch. 93, § 103(a).

54. The banking services offered by E*Trade Bank through E*Trade-operated ATMs in Massachusetts constitute a program or activity under Mass. Const. amend. CXIV.

55. Each Defendant has excluded blind people from the participation in and benefits of the banking services offered by E*Trade Bank through E*Trade-operated ATMs in Massachusetts and has subjected Plaintiffs to discrimination under Mass. Const. amend. CXIV and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103(a).

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

(a) exercise jurisdiction over this action;

(b) declare that the actions and inactions of Defendants E*Trade Access, Inc. and E*Trade Bank violate Title III of the ADA, 42 U.S.C. §§ 12182 and 12183, 28 C.F.R. § 36.101 *et seq.*, the Massachusetts Public Accommodations Act, Mass. Gen. Laws. ch. 272 §§ 92A and 98, and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 103.

(c) enjoin each of the Defendants from continuing to violate the ADA and Massachusetts law and order all Defendants immediately to make the necessary modifications to the ATMs they operate or operate and lease, so that blind people may have access to and independently use these ATMs; and

(d) order such other relief as may be just, equitable and appropriate, including an award of actual and punitive damages, reasonable attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. § 12205, and Mass. Gen. Laws ch. 151B, §§ 5 and 9.

Respectfully submitted,

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br>By its attorneys,<br>By their attorneys, | NFB, NFB-MASSACHUSETTS AND THE<br>INDIVIDUAL PLAINTIFFS, |
| *[signature]*<br>Patricia Correa, BBO No. 560437<br>Assistant Attorney General<br>Director, Disability Rights Project<br>OFFICE OF THE ATTORNEY GENERAL<br>One Ashburton Place<br>Boston, MA 02108<br>(617) 727-2200, ext. 2919 | *[signature]*<br>Anthony Doniger, BBO No. 129420<br>Christine M. Netski, BBO No. 546936<br>Sugarman, Rogers, Barshak & Cohen<br>101 Merrimac Street<br>Boston, MA 02114-4737<br>(617) 227-3030 |
| DATED:   July 22, 2003 | *[signature]*<br>Daniel F. Goldstein (admission pending)<br>Sharon Krevor-Weisbaum (admission pending)<br>BROWN, GOLDSTEIN & LEVY, LLP<br>120 E. Baltimore Street<br>Suite 1700<br>Baltimore, Maryland 21202<br>(410) 962-1030 |