UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

<table>
<tr><td>COMMONWEALTH OF MASSACHUSETTS, NATIONAL FEDERATION OF THE BLIND, INC., NATIONAL FEDERATION OF THE BLIND OF MASSACHUSETTS, INC., ADRIENNE ASCH, JENNIFER BOSE, AND THERESA JERALDI,<br>       Plaintiffs<br><br>v.<br><br>E*TRADE ACCESS, INC., E*TRADE BANK, CARDTRONICS, LP, AND CARDTRONICS, INC.,<br>       Defendants</td><td>CIVIL ACTION NO. 03-11206-MEL</td></tr>
</table>

**PRIVATE PLAINTIFFS' MOTION FOR LEAVE TO FILE A FOURTH AMENDED AND SUPPLEMENTAL CLASS ACTION COMPLAINT**

Pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure, Plaintiffs,

National Federation of the Blind ("NFB"), Adrienne Asch, Jennifer Bose and Theresa

Jeraldi (collectively, "Private Plaintiffs"), respectfully move this Court for leave to file

their Fourth Amended and Supplemental Class Action Complaint.[1] As demonstrated

below, the addition of Private Plaintiffs' proposed class action allegations may obviate

the need to address Defendants' belated arguments, raised in Defendants' most recent

motions for partial summary judgment, that Private Plaintiffs lack standing,[2] and will

provide an efficient and cost-effective vehicle for remedying Defendants' systematic

---

[1] The proposed Fourth Amended and Supplemental Class Action Complaint is attached as Exhibit 1.

[2] The Supreme Court has recognized the propriety of "avoid[ing] deciding the standing issue by granting the [plaintiff's] motion to add as parties" persons who indisputably have standing. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833 (1989) (describing the decision in *Mullaney v. Anderson*, 342 U.S. 415 (1952)).

violations of federal law.  Moreover, because the proposed complaint asserts identical

claims to those already being litigated in this case and because no discovery schedule or

trial date has been set, Defendants will not be prejudiced if the amendment is permitted.

## DESCRIPTION OF THE PROPOSED COMPLAINT

The purpose of the proposed Fourth Amended and Supplemental Class Action

Complaint is to preserve the nature of the case as the parties and the Court have treated it

for three years and thus to ensure that blind people throughout the country will be able to

use Defendants' ATMs independently.  To that end, the proposed complaint adds five

individual plaintiffs from various states around the country and requests certification of a

class and a sub-class.  The class consists of blind people who have suffered

discrimination at the Cardtronics Defendants' ATMs;  the sub-class consists of blind

people who have suffered discrimination by denial of Defendant E*TRADE Bank, Inc.'s

services.  Because both the class and sub-class are of nationwide scope and because the

named plaintiffs do not seek certification of a Massachusetts sub-class, NFB-

Massachusetts is dropped as a plaintiff.  Finally, the claims asserted by the named

plaintiffs in the new complaint are the same as those currently pending before this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs[3] filed this lawsuit on June 25, 2003, alleging that Defendants,

E*TRADE Bank, Inc. ("E*TRADE Bank") and E*TRADE Access, Inc. ("Access"), have

violated the Americans with Disabilities Act ("ADA"),[4] as well as Massachusetts

statutory law, by virtue of E*TRADE Bank's failure to offer its banking services through

ATMs that are accessible to blind people and by virtue of Access's ownership, operation,

---

[3] Plaintiffs include the Commonwealth of Massachusetts, which seeks state-wide relief in this case.

[4] 42 U.S.C. §§ 12182 and 12183.

control and/or leasing of ATMs that are inaccessible to the blind.[5]   In their original

complaint, Plaintiffs sought, among other relief, an injunction to immediately make the

ATMs Defendants owned, operated, controlled and/or leased throughout the United

States accessible to and independently useable by the blind.[6]   On February 22, 2005,

following the acquisition of Access by Cardtronics, LP, this Court allowed Plaintiffs'

motion to amend their complaint to add Cardtronics, LP, and Cardtronics, Inc.

(collectively "Cardtronics") as Defendants, thereby expanding the reach of Private

Plaintiffs' proposed nationwide injunction to over 25,000 ATMs.[7]

Not only have Private Plaintiffs made clear from the inception of this lawsuit that

they are seeking nationwide injunctive relief, but Access affirmatively sought out a

determination of its legal obligations that would govern its entire fleet of ATMs.

Specifically, after Plaintiffs filed their complaint in the Massachusetts Commission

Against Discrimination ("MCAD") – a necessary step to exhausting administrative

remedies on their state claims – Access filed a preemptive federal action in the Eastern

District of Virginia with respect to its "nationwide network."[8]   Access's stated

justification for filing the Virginia action was its concern that "any proceeding before

MCAD (1) could only address the small Massachusetts portion of the nationwide

network; and (2) would provide no guidance on or certainty about Access' liability for

---

[5] Complaint, Paper No. 1.

[6] Paper No. 1, p. 14.

[7] Order, Paper No. 114;  Third Amended Complaint, Paper No. 115.

[8] *E*TRADE Access, Inc. v. Nat'l Fed. of the Blind, Inc.*, United States District Court for the Eastern District of Virginia, Civil Action No. 03-743-A, Complaint for Declaratory Judgment, attached as Exhibit 2, ¶ 12.

the remainder of its network."[9]  Access even represented that "[c]ontinued uncertainty as
to Access' liability under the ADA for the Merchant-Owned ATMs in its network could
have had a devastating financial effect on Access' business."[10]

Once it was determined that the issue of Access's obligations under the ADA
would be resolved in Massachusetts, the parties continued to litigate this dispute as a
nationwide case.  In April of 2004, Defendants filed a Rule 12(b)(7) motion seeking to
require Plaintiffs to join the more than 11,000 merchants who Defendants claimed owned
title to ATMs within its nationwide network.  Defendants described the case by stating,
"[t]his lawsuit concerns over 11,000 Merchant-owned ATMs located throughout the 50
states and the District of Columbia," and asserted, as grounds for their motion, that
Defendants would face the risk of "inconsistent obligations and piecemeal litigation" if
the merchants throughout the country were not joined as necessary parties.[11]  Thus, far
from suggesting that Plaintiffs lacked standing to obtain nationwide relief, Defendants
sought to ensure that any such nationwide injunction would afford "complete relief" by
ultimately binding the merchants located throughout the country, as well as Defendants.[12]

Defendants never questioned the nationwide scope of the case – whether on the
grounds of standing or otherwise – at any time during the briefing of Defendants' motion
for judgment on the pleadings or either party's motion for summary judgment.  In

---

[9] *E*TRADE Access, Inc. v. Nat'l Fed. of the Blind, Inc.*, United States District Court for the Eastern District
of Virginia, Civil Action No. 03-743-A, Plaintiff E*TRADE Access, Inc.'s Opposition to Defendant's
Motion to Dismiss, attached as Exhibit 3, p. 5.

[10] Exhibit 3, p. 5.

[11] Memorandum in Support of Defendants' Rule 12(b)(7) Motion to Join Necessary Parties, Paper No. 44,
pp. 3, 13.

[12] Paper No. 44, p. 10-12.

response to Plaintiffs' motion for summary judgment on Count V of their Third Amended Complaint, Defendants argued that Plaintiffs' proposed nationwide injunction was impermissibly vague and unenforceable and that Plaintiffs had not presented a sufficient factual basis justifying summary judgment with respect to Defendants' 25,000 ATMs nationwide.[13]

In its February 21, 2006 Memorandum and Order, although the Court declined to enter summary judgment in favor of Plaintiffs on Count V pending a "more comprehensive showing that documents the specific types of accessibility problems or design defects encountered in a larger sample of ATMs nationwide," the Court expressly suggested that such a showing "may be secured by the relatively simple devices of requests for admissions or interrogatories addressed to Defendants."[14] Thus, the Court, like the parties, understood the scope of this case to be Cardtronics's national fleet of ATMs.

In accordance with the Court's suggestion, on March 2, 2006, Plaintiffs served an interrogatory requesting Defendants to list "all Cardtronics ATMs as to which any information or instructions for use are available only visually" and to provide certain identifying information with respect to those ATMs, including the name and address of their retail location.[15] Defendants did not respond to that interrogatory, but rather, in May, 2006, filed motions for summary judgment based upon an alleged lack of nationwide standing and simultaneously sought a stay of all pending discovery. Thus, it

---

[13] Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, Paper No. 142.

[14] Memorandum and Order, Paper No. 172, p. 4.

[15] Plaintiffs' Supplemental Interrogatory to Defendant Cardtronics, Inc. and Cardtronics, LP, attached as Exhibit 4.

was only when it appeared likely that Defendants finally would be forced to reveal information exposing the systemic inaccessibility of their ATMs and, as a result, that Plaintiffs would prevail as a matter of law on Count V, that Defendants determined that it would be to their advantage to do a complete about-face and attempt to scale back the nationwide scope that they had so vigorously sought in the Eastern District of Virginia and that had formed the basis for this litigation for both the parties and the Court since it was filed over three years ago.

On May 4, 2006, Defendants filed their Motion for Summary Judgment on Counts III, IV and V Due to Lack of Standing and, on May 16, 2006, a Motion for Summary Judgment on Count II Due to Lack of Standing.[16]  As the titles of these recent motions make clear, however, Defendants do not seek summary judgment as to all counts of Plaintiffs' Third Amended Complaint.  Specifically, Defendants do not seek summary judgment on Count I, which alleges a violation of the ADA's full and equal enjoyment of services mandate, or Counts VI and VII, which allege violations of Massachusetts statutory law.  Thus, Defendants' most recent effort to avoid its obligations under the law and to further delay this litigation will not, under any circumstances, resolve the whole case.  Moreover, even if Defendants were to succeed in narrowing the scope of potential relief in this case, the claims of the vast number of blind individuals across the country who have encountered discrimination by virtue of being unable to independently use Defendants' ATMs will remain unresolved and would thus require the filing of a class action just like the proposed amendment.

Under these circumstances, in order to provide for the efficient resolution of the claims alleged in the proposed Fourth Amended and Supplemental Class Action

---

[16] Paper Nos. 177 and 182.

Complaint, as well as those of other unnamed class members, Private Plaintiffs seek to join these claims in the present action.

## ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that, after receipt of a responsive pleading, a party may amend its pleading only with leave of court "and leave shall be freely given when justice so requires." In *Foman v. Davis,* the Supreme Court made clear that "this mandate is to be heeded."[17]

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave should, as the rules require, be "freely given."[18]

The Court of Appeals for the First Circuit has "often described" the standard set forth in *Foman* as "reflecting the 'liberal' amendment policy underlying Rule 15."[19]

Rule 21 of the Federal Rules of Civil Procedure provides in pertinent part that, "[p]arties may be . . . added by order of the court on motion of any party . . . at any stage of the action and on such terms as are just." The standards for adding a party pursuant to Rule 21 and for amending pleadings to add a party pursuant to Rule 15(a) are the same after the opposing party has filed a responsive pleading.[20]

---

[17] *Foman v. Davis,* 371 U.S. 178, 182 (1962).

[18] *Id.*

[19] *O'Connell v. Hyatt Hotels of Puerto Rico,* 357 F.3d 152, 154 (1st Cir. 2004).

[20] *See* 3 *Moore's Federal Practice* § 15.16[1] at 15-55 (3d ed. 1997). *See also Data General Corp. v. Grumman Systems Support Corp.,* 825 F.Supp. 340 (D. Mass. 1993) ("Where the motion to amend comes after responsive pleadings have been served, the standard for adding a party is the same whether the motion is made under Rule 15 or Rule 21 . . . .").

## A.      Defendants Will Suffer No Prejudice By The Proposed Amendment.

Among the factors articulated by the Supreme Court in *Foman*,[21] prejudice to the

defendant is the most important.  Indeed, "[i]f no prejudice is found, then leave will

normally be granted."[22]  Moreover, "[t]ransforming an individual action into a class

action does not, in and of itself, create the type of prejudice sufficient to deny a motion to

amend."[23]  For example, in *Presser v. Key Food Stores Co-op, Inc.*,[24] the court rejected

the defendant's argument that a 21-month delay in seeking to amend to add class action

allegations justified denying the plaintiff's Rule 15(a) motion, reasoning as follows:

> Defendant cites several cases in which leave to amend was denied
> for reason of delay . . . .  In all of these cases, however, discovery
> had closed and the moving parties were seeking to add new claims
> or defenses to their complaints.  Here, although over twenty-one
> months has elapsed since Plaintiff filed this lawsuit, discovery has
> not yet begun and no trial date is set.  Furthermore, Plaintiff does not
> seek to add a new cause of action, but to add a class of plaintiffs on
> a claim already in the complaint. . . .   For these reasons, Defendant
> will not be significantly prejudiced if Plaintiff is allowed to amend
> her complaint.[25]

In the present case, Defendants will not be prejudiced if the requested amendment

is permitted.  First, and perhaps most important, the proposed class allegations and

corresponding claims for relief are virtually identical to those which were asserted by

---

[21] 371 U.S. 178 (1962).

[22] 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1484 at 600 (2d ed. 1990 and 1997 Supp.).

[23] *Bertrand v. Sava*, 535 F. Supp. 1020, 1023 (S.D.N.Y.), *rev'd on other grounds*, 684 F.2d 204 (2d Cir. 1982).

[24] 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (citations omitted).

[25] *See also Bernstein v. Nat'l Liberty Int'l Corp.*, 407 F. Supp. 709, 714 (E.D. Pa. 1976) ("Even though plaintiff's motion to add class action allegations . . . [was] not filed until almost eight months after the filing of the original complaint, absent a showing of prejudice to defendant, a mere delay in seeking certification is not a ground for denying the motion . . . ."); *cf. Souza v. Scalone*, 64 F.R.D. 654, 656 (N.D. Cal. 1974) (noting that, "as a general rule, delay in seeking certification is not grounds for denial").

Plaintiffs at the outset of this case and, thus, do not create any unfair surprise to Defendants. Indeed, as mentioned earlier, Defendants previously took the position that they would suffer severe prejudice if only the state law claims were adjudicated in Massachusetts and, as a result, they would not receive guidance as to their entire network of ATMs.

Second, although this case has been pending for more than three years, the Court has not issued a scheduling order, has not imposed any discovery deadlines and has not set dates for either a pretrial conference or the trial. Instead, the progress of the case has been thwarted by the numerous, seriatim motions filed by Defendants. In addition, although Plaintiffs have repeatedly sought to proceed with meaningful discovery, Defendants have stonewalled these efforts.[26] In fact, essentially no deposition discovery has yet been permitted in the case and Cardtronics has not yet produced any detailed information concerning its fleet of ATMs. Thus, Plaintiffs' proposed amendment will not create the significant prejudice that is required in order to justify denial of a motion to amend.[27]

For these same reasons, the mere fact that Defendants have filed partial summary judgment motions challenging Private Plaintiffs' standing to seek nationwide relief does not alter the applicability of the liberal amendment policy mandated by the Supreme Court in *Foman*. While the courts in this circuit have sometimes required a plaintiff who seeks to amend after the defendant has moved for summary judgment to demonstrate that

---

[26] *See* Affidavit of Daniel F. Goldstein, Esq. Pursuant to Fed. R. Civ. P. 56(f), Exhibit 1 to Paper No. 156.

[27] *See, e.g., Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial and a likely major alteration in trial tactics and strategy' . . . .").

9

the proposed amendment is supported by substantial and convincing evidence, they have

done so only where the pending motion might dispose of the entire case and where the

procedural posture of the case is so advanced that there is little question that the

defendant will suffer serious prejudice.[28] In contrast, in this case, the pending motions –

even if successful – will not dispose of the case, the claims asserted by the class are

identical to those asserted by the existing plaintiffs and the parameters of discovery will

not be altered significantly as a result of the proposed amendment. If necessary,

however, as discussed in more detail in Section B below, Private Plaintiffs can readily

establish that their proposed amendment is supported by substantial and convincing

evidence.

**B.     The Proposed Amendment Will Not Be Futile:  The Proposed Class Is
        Appropriate for Certification Under Rule 23.**

The proposed complaint seeks to preserve the current scope of the case through

the vehicle of a class action designed to press the right of all blind people in the United

States to use Cardtronics ATMs independently. As such, it clearly is not futile. Classes

of plaintiffs with disabilities challenging barriers under Title III of the ADA are routinely

certified.[29] "To obtain class certification, the plaintiff must establish the four elements of

---

[28] *See, e.g., Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 231 (1st
Cir. 2005) (affirming denial of motion to amend where plaintiff sought to add entirely new legal theory
after summary judgment had been entered against plaintiff on several counts of the existing complaint and
the parties had fully briefed summary judgments on the remaining counts); *Steir*, 383 F.3d at 11-12
(upholding denial of motion to amend to "inject a new theory of relief into the litigation" after the close of
discovery).

[29] *See, e.g., Lucas v. Kmart Corp.*, Civil Action No. 99-cv-1923-JLK, 2005 WL 1648182 (D. Colo. July
13, 2005) (certifying nationwide class of people who use wheelchairs challenging barriers and policies at
over 1,400 retail stores); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) (certifying statewide
class of people who use wheelchairs challenging barriers and policies at approximately 220 restaurants);
*Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd.*, 197 F.R.D. 522, 530 (S.D. Fla. 2000) (certifying
nationwide class of individuals with disabilities challenging barriers and policies at healthcare facilities);
*Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 363 (D. Colo. 1999) (certifying statewide
class of people who use wheelchairs challenging barriers at approximately 42 restaurants); *Arnold v. United*

Rule 23(a) and one of several elements of Rule 23(b).  The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."[30]  In this case, Private Plaintiffs seek certification under Rule 23(b)(2) because Defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[31]

Defendants operate over 25,000 ATMs nationwide.  The number of potential blind users of these machines is in the hundreds of thousands, making joinder impracticable.  "'Federal trial courts are quite willing to accept common assumptions in order to support a finding of numerosity.'"[32]  Plaintiffs will be able to satisfy the numerosity prong.

In analyzing class certification, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."[33]  Named plaintiffs in the proposed Fourth Amended and Supplemental Class Action Complaint have claims that are typical of those of the class: the experience of suffering discrimination on the basis of their blindness while attempting or desiring to use Defendants' ATMs.  These common experiences raise common factual and legal questions, for example, whether Defendants' ATMs are in compliance with Title III of the ADA.  "A number of courts have held that where people who use

---

*Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 452 (N.D. Cal.), *modified*, 158 F.R.D. 439, 460 (1994) (certifying a statewide class of people who use wheelchairs challenging barriers at the defendant's movie theaters).

[30] *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 613-14 (1997)).

[31] Fed. R. Civ. P. 23(b)(2).

[32] *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir.1981)).

[33] *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

11

wheelchairs encounter the same types of barriers at a number of commonly-owned or affiliated public accommodations, commonality is established and class certification is appropriate."[34]    There is no reason to think there is any less commonality (or typicality) when individuals who are blind encounter similar barriers than among individuals with mobility impairments who encounter similar barriers.

The adequacy prong "requires that Plaintiff demonstrate that her interests will not conflict with those of class members and that her counsel is qualified, experienced and able to vigorously conduct the proposed litigation."[35]    The named plaintiffs and proposed class counsel will adequately represent the interests of the class.  There are no conflicts between the named plaintiffs and the class, and proposed class counsel are experienced in class action litigation.  Indeed, the attorneys certified as class counsel in the *Lucas*, *Moeller*, and *Colorado Cross-Disability Coalition* cases have joined the Private Plaintiffs' litigation team.

Finally, this case is precisely the type of case for which Rule 23(b)(2) was intended.  "[S]ubdivision (b)(2) was added to Rule 23 in 1966 primarily to facilitate the bringing of class actions in the civil rights area," in large part because "the class suit is a uniquely appropriate procedure in civil rights cases, which generally involve an allegation of discrimination against a group as well as the violation of rights of particular individuals."[36]    Indeed, the Supreme Court has found that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule

---

[34] *Moeller*, 220 F.R.D. at 609 (citing cases).

[35] *Mack v. Suffolk County*, 191 F.R.D. 16, 23 (D. Mass. 2000) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

[36] 7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1775-76 (2d ed. 1986).

23(b)(2) classes[37] and one judge, in certifying a class challenging barriers under Title III, noted that it "provide[d] a paradigm for class certification under Rule 23(b)(2)."[38]

Private Plaintiffs' requested amendment will provide for the efficient resolution of the claims alleged in the Fourth Amended and Supplemental Class Action Complaint. Ongoing investigation has revealed a large number of blind individuals who have been subjected to discrimination as a result of being unable to use Defendants' ATMs independently and as a result of being denied access to E*TRADE Bank's banking services.[39] These violations of the ADA are identical to those alleged by the current plaintiffs. Each of these individuals has a viable claim against Defendants, which he or she is entitled to bring in his or her home jurisdiction. For the same reasons that underlie Rule 23 of the Federal Rules of Civil Procedure, it will be more efficient to resolve all of these claims – and those of other unnamed class members – in a single proceeding, rather than allowing for multiple cases in multiple jurisdictions, with the resulting potential for the application of different or conflicting legal standards. For these reasons as well, the requested amendment properly alleges a class action and thus is not futile.

## CONCLUSION

For all of these reasons, Private Plaintiffs respectfully request this Court to grant their motion for leave to file the attached Fourth Amended and Supplemental Class Action Complaint.

---

[37] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 697).

[38] *Lucas*, 2005 WL 1648182, at *2. *See also Mack*, 191 F.R.D. at 24 ("This section of Rule 23 was designed to accommodate civil rights class actions in which the members of the class may be difficult to enumerate." (Citing *Advisory Committee's Note To 1966 Amendment to Rule 23*)).

[39] *See* Declarations, attached as Exhibits 5A-5T. In support of their motion for class certification, Private Plaintiffs anticipate filing additional declarations documenting the inaccessibility of Cardtronics's ATMs and E*TRADE Bank's services to blind people.

## LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel for Private Plaintiffs hereby certify that they have

conferred with counsel for Defendants, in writing, prior to filing this motion is a good

faith attempt to resolve or narrow the issues raised in this motion.

Assented to:

| COMMONWEALTH OF MASSACHUSETTS, By its Attorneys, | NFB AND THE INDIVIDUAL PLAINTIFFS, By their Attorneys, |
|---|---|

*/s/ Patricia Correa*

Patricia Correa, BBO #560437
Assistant Attorney General
Director, Disability Rights Project
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2919

*/s/ Christine M. Netski*

Anthony M. Doniger, BBO #129420
Christine M. Netski, BBO #546936
Sugarman, Rogers, Barshak &
    Cohen, P.C.
101 Merrimac Street
Boston, MA 02114-4737
(617) 227-3030

*/s/ Daniel F. Goldstein*

Daniel F. Goldstein
Sharon Krevor-Weisbaum
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
(410) 962-1030

Amy F. Robertson (Admission Pending)
Fox & Robertson, P.C.
910 - 16th Street, Suite 610
Denver, CO 80202
(303) 595-9700

Timothy P. Fox (Admission Pending)
Fox & Robertson, P.C.
910 - 16th Street, Suite 610
Denver, CO 80202

DATED:  September 18, 2006                    (303) 595-9700

14

<u>CERTIFICATE OF SERVICE</u>

I, Christine M. Netski, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.  The participants are as follows:

Patricia Correa, Esquire
Assistant Attorney General
Director, Disability Rights Project
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
patty.correa@ago.state.ma.us
Attorney for Plaintiff, Commonwealth of
Massachusetts

Daniel F. Goldstein, Esquire
Sharon Krevor-Weisbaum, Esquire
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
dfg@browngold.com
skw@browngold.com
Attorneys for Plaintiffs, National Federation
of the Blind, Inc., National Federation of
Blind of Massachusetts, Inc., Adrienne Asch,
Richard Downs, Theresa Jeraldi and Philip Oliver

Joseph L. Kociubes, Esquire
Rachel Splaine Rollins, Esquire
Jenny K. Cooper, Esquire
Bingham McCutchen, LLP
150 Federal Street
Boston, MA 02110
joe.kociubes@bingham.com
rachel.rollins@bingham.com
jenny.cooper@bingham.com
Attorneys for Defendants,
E*Trade Access, Inc. and
E*Trade Bank

Douglas P. Lobel, Esquire
David A. Vogel, Esquire
Cooley Godward LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
dlobel@cooley.com
dvogel@cooley.com
Attorneys for Defendants,
E*Trade Access, Inc. and
E*Trade Bank

*/s/ Christine M. Netski*

_____
Christine M. Netski
netski@srbc.com

15