UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, et al., <br><br> Plaintiffs <br><br> v. <br><br> E*TRADE ACCESS, INC., et al., <br><br> Defendants | CIVIL ACTION NO. 03-11206-MEL |

### FINAL ORDER AND JUDGMENT

Plaintiffs, Commonwealth of Massachusetts, National Federation of the Blind, Inc. ("NFB"), Adrienne Asch, Jennifer Bose, Norma Crosby, Dwight Sayer, Robert Crowley, Jr., Raymond Wayne, Terri Uttermohlen, and Bryan Bashin, seek final approval of the class action settlement that was approved preliminarily by this Court on July 26, 2007. *See* Memorandum and Order Granting Unopposed Motion for Preliminary Approval of Class Action Settlement and for Fairness Hearing ("Preliminary Approval Order"). Specifically, Plaintiffs have moved the Court for an Order: (1) finding that the class action Settlement Agreement between Plaintiffs and Defendants, Cardtronics, LP, and Cardtronics, Inc. (collectively "Cardtronics"), is a fair, reasonable and adequate settlement of all of the claims of the class against Defendants, overruling the single objection to the proposed settlement and finding that each class member shall be bound by the Settlement Agreement, including its release; (2) finding that the Notice published to the class satisfies the requirements of due process and Fed. R. Civ. P. 23; (3) approving an award of attorneys' fees and costs by Defendants to Plaintiff, NFB, in the amount

of $900,000, as agreed to by the parties; (4) dismissing this lawsuit on the merits and with prejudice as to all claims in the lawsuit against all Defendants; (5) attaching and incorporating by reference the terms of the Settlement Agreement; and (6) retaining jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement.

I.   **Background**

   A.   **Plaintiffs' Claims**

Cardtronics currently owns and/or operates at least 23,300 ATMs throughout the United States, including approximately 15,000 ATMs formerly owned and/or operated by Defendant E*TRADE Access, Inc. ("Access").[1] Approximately half of these ATMs are owned by independent merchants who are customers of Cardtronics ("Merchant-Owned ATMs"). This litigation concerns Plaintiffs' request that Cardtronics's fleet of ATMs be made accessible to and independently useable by blind people through the use of voice-guidance technology.

Some of the ATMs in the Cardtronics fleet already have voice guidance. Those ATMs that are not currently voice-guided vary in their capacity to be made voice-guided. Many newer machines have the capacity to be upgraded to provide voice-guidance through a straightforward retrofit process ("Upgradeable ATMs"). Other, older, machines are not able to be upgraded and must be replaced completely in order to make voice guidance available.

Plaintiffs' Fourth Amended and Supplemental Class Action Complaint ("Fourth Amended Complaint") alleges that Cardtronics has failed to make all of the ATMs it owns and/or operates accessible to blind individuals in violation of Title III of the ADA, 42 U.S.C.

---

[1] On or about June 2, 2004, Cardtronics LP acquired Access's ATM business.

§§ 12181 *et seq.,* and Section 4.34.5 of the Department of Justice Standards for Accessible Design, 28 C.F.R. pt. 36, app. A ("Standards") (requiring that ATMs be "accessible to and independently useable by persons with vision impairments"). Title III is enforceable through a private right of action for injunctive relief and prevailing plaintiffs are entitled to attorneys' fees. *See* 42 U.S.C. §§ 12188(a)(1), (2) and 12205. Plaintiffs have also alleged violations of the Massachusetts Public Accommodations Act ("MPAA"), Mass. Gen. Laws ch. 272, §§ 92A and 98, and the Massachusetts Equal Rights Act ("MERA"), Mass. Gen. Laws ch. 93, § 103.

Although numerous procedural and substantive disputes have arisen throughout this litigation, the case turns primarily on the vigorously contested issues of whether Defendants' ATMs are in violation of the Standards and, if they are, whether Plaintiffs are entitled to an injunction that would require Cardtronics to install voice-guidance capabilities on all ATMs it owns and/or operates, including Merchant-Owned ATMs. The lawsuit also includes claims against Defendant E*TRADE Bank, Inc. concerning its banking policies applicable to consumers' use of the Cardtronics ATMs. These claims are derivative of the claims addressing the accessibility of the Cardtronics ATMs.

### B.   Pre-Filing Settlement Negotiations

On June 9, 2003, after lengthy negotiations, the Commonwealth and the NFB entered into a Partial Settlement Agreement ("PSA") with Defendants Access and E*TRADE Bank, Inc. (collectively "E*TRADE"), pursuant to which Access agreed to equip the ATMs it owned with voice guidance over a period of two and one-half years. The parties were not able to reach agreement with respect to Merchant-Owned ATMs.

### C. Litigation

On June 23, 2003, the Commonwealth and the NFB, along with several individual blind people and the NFB's Massachusetts affiliate, filed the present suit against E*TRADE. From its inception, this litigation has been hard-fought. As fully detailed in the Preliminary Approval Order, this complex case involved numerous dispositive motions, voluminous document discovery and several significant discovery-related motions.

## II. Summary of the Settlement

After an all-day mediation on April 9, 2007, and following further negotiations over the course of more than two months, the parties executed the Settlement Agreement on June 21, 2007.

In summary, the settlement requires:

- All Cardtronics-Owned ATMs will be voice-guided by the end of this year, with two exceptions: a set of approximately 1,600 machines that already have voice-guidance, but do not have, as otherwise required by the Settlement Agreement, audible verification of all of the inputs by the ATM user; and a set of no more than 177 machines will be voice-guided by mid-2008. (Settlement Agreement, ¶ 3.1.)

- As of April 9, 2007 and going forward, Cardtronics will only install Cardtronics-Owned ATMs that are voice-guided. (Settlement Agreement, ¶ 3.1)

- As of April 9, 2007 and going forward, Cardtronics will only sell or make available to merchants ATMs that are voice-guided. (Settlement Agreement, ¶ 3.2.1.)

4

- Cardtronics will identify the smallest subset of Merchant-Owned ATMs without voice guidance that collectively account for 80% of transactions at Merchant-Owned ATMs ("High Volume Merchants") and will, within ninety (90) days of approval, offer those merchants that have Upgradeable ATMs the opportunity to upgrade to add voice guidance at no cost, and will offer those merchants whose machines are not upgradeable the opportunity to purchase a voice-guided machine at Cardtronics's wholesale cost. (Settlement Agreement, ¶ 3.2.2.)
- Regardless of the outcome of this marketing plan, Cardtronics will ensure that, by July 1, 2010, at least ninety (90) percent of all transactions on the ATMs covered by the settlement occur on voice-guided ATMs. (Settlement Agreement, ¶ 3.3.)
- After July 1, 2010, Cardtronics will not add or renew any merchant-owned ATMs that are not voice-guided, so that any remaining ATMs constituting less than 10% of transaction volume that are not yet voice-guided will either become so or be eliminated. (Settlement Agreement, ¶ 3.3.2.)
- Any additional functions that are added to ATMs covered by the settlement will be accessible to blind patrons within ninety (90) days unless Cardtronics believes doing so would not be technically feasible without causing undue burden or delay, in which case the parties are to meet and confer to attempt to eliminate the obstructions to adding such new functions. (Settlement Agreement, ¶ 3.7.)
- Cardtronics-owned ATMs acquired after final approval of the settlement agreement shall be voice-guided within two (2) years; after-acquired Merchant-owned ATMs that are Merchant-Owned by High Volume Merchants will receive

the upgrade or replacement offers described above. (Settlement Agreement, ¶ 3.6.)

- Cardtronics will provide web-based information and signage to assist blind patrons in identifying which of its ATMs are voice-guided. (Settlement Agreement, ¶¶ 4.1, 4.2.)

- Cardtronics will report to Class Counsel throughout the term of the Settlement Agreement concerning the number of voice-guided ATMs and the percentage of transactions occurring on such ATMs, and that progress will be verified by Cardtronics and monitored by the NFB. (Settlement Agreement, ¶ 4.4.)

- Cardtronics must comply with any future regulatory requirements that impose additional requirements, but if regulations require less than the Settlement Agreement, the Settlement Agreement controls. (Settlement Agreement ¶5.1)

- Class members will release claims for injunctive relief and attorneys' fees under Title III of the ADA, the MPAA, the MERA, and any other claims held by the named plaintiffs to the extent such claims relate to the accessibility of ATMs to blind people. Class members also release claims for injunctive relief under state law to the extent it incorporates or is equivalent to Title III. (Settlement Agreement, ¶¶ 7.1, 7.2.)

- Class members (excepting the named plaintiffs) do not release claims for damages. (Settlement Agreement, ¶ 7.1.3.)

- Cardtronics will pay $900,000 in attorneys' fees to the NFB and make a contribution of $100,000 to the local consumer aid fund of the Massachusetts Attorney General. (Settlement Agreement, ¶¶ 9.1, 9.2.)

Because the Settlement Agreement applies to all Cardtronics ATMs -- including former E*TRADE ATMs -- it supercedes the earlier PSA among E*TRADE, the Commonwealth, and the NFB. Although E*TRADE is not a party to the Settlement Agreement, that agreement concludes this litigation and calls for the dismissal with prejudice of all claims in this case against all Defendants. (Settlement Agreement, ¶ 2.7(c).) The implementation of voice guidance on the ATMs makes it unnecessary for E*TRADE Bank to change its policies as sought in the lawsuit.

In the Settlement Agreement, the parties agreed that the Court should retain jurisdiction of this case for purposes of the interpretation, administration, implementation, effectuation, and enforcement of this Agreement. (Settlement Agreement, ¶ 2.7(d).) In addition, Defendants have withdrawn their opposition to Plaintiffs' motion for leave to file a Fourth Amended Complaint (Settlement Agreement, ¶ 2.1) and the Court has granted the parties' joint motion for certification of a settlement class, which includes all persons who are Blind patrons of ATMs covered by the Settlement Agreement.

## III. Preliminary Approval

As mentioned, on July 26, 2007, this Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and scheduled a Fairness Hearing on the proposed settlement for December 4, 2007. In the Preliminary Approval Order, the Court

7

approved the parties' proposed plan for notifying class member of the settlement, as well as the form of the notice to be utilized for this purpose ("Notice").

## IV.  Notice to the Class

The Court finds that the Notice approved in the Court's Preliminary Approval Order was made available on Cardtronics's website from approximately August 23, 2007 to November 1, 2007 and that a copy of the Notice was also available on the NFB's website during that same period.

The Court also finds that a copy of the Notice was mailed to a list of over 900 organizations, including a number composed of, and/or focused on the issues of, blind people. Of those mailings, 36 were returned due to incorrect addresses. The correct addresses were ascertained for 11 of those returned mailings and the Notice was then sent to those correct addresses. In addition, the Notice was emailed to 1,036 email addresses relating to the organizations referenced above, with a cover letter requesting that the recipient post and forward the Notice. Of those emails, 186 were returned as undeliverable. Fifteen organizations to whom the Notice was emailed notified class counsel that they had forwarded the Notice to other individuals or lists of individuals thought to be class members. Another ten organizations notified class counsel that they had posted the Notice on their websites. The NFB sent the Notice to over 50 email lists of blind individuals, including lists of blind lawyers, students, and travelers. In each of these paper and electronic mailings, counsel for the class offered to provide Braille versions of the Notice and/or the Settlement Agreement. Class counsel ultimately received and honored six requests for Braille documentation.

The Court finds further that the Notice was published in the August/September edition of the *Braille Monitor*, which is the publication of the NFB and is regularly sent to its approximately 50,000 members, among others. The Notice was also published in the September, 2007, edition of the *Braille Forum*, as well as in the *New York Times*, the *Los Angeles Times*, and *USA Today* on August 28, 2007.

In addition, the Court finds that there has been only one objection to the proposed settlement. This objection purports to be on behalf of Mason P. James, of Loveland, Texas, and states only that "[m]e wish to object to the proposed settlement." *See* Objection by Mason P. James (Sept. 27, 2007, Paper No. 270).

## DISCUSSION

### I.     The Settlement Agreement is Granted Final Approval.

A court may approve the settlement of a class action only upon finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (same). The First Circuit has recognized a clear policy of encouraging settlements in class action cases, and has stated that "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'ship*, 100 F.3d at 1043. In determining the fairness, reasonableness and adequacy of a proposed class action settlement, several courts in this district have looked to the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

For all of the reasons set forth in the Court's Preliminary Approval Order, an analysis of these factors strongly supports this Court's final approval of the Settlement Agreement as fair, reasonable and adequate. In addition, this Court overrules the single objection to the proposed settlement, as no reasons were provided for that objection as required by the Notice approved by the Court. Therefore, this Court also finds that all class members are bound by the Settlement Agreement, including its release provisions.

## II.     Notice to the Class

Rule 23(e) states that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." The notice must satisfy Rule 23, as well as due process requirements. *Cf. Besinga v. United States*, 923 F.2d 133, 136-37 (9th Cir. 1991) (requirements of due process and Fed. R. Civ. P. 23(c)(2)(B) are similar). "'[I]t is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members." *Reppert v. Marvin Lumber and Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) (citations omitted). "When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004).

This Court finds that the notice program approved in its Preliminary Approval Order and now implemented by the parties was the best notice practicable under the circumstances and satisfied the requirements of due process and Fed. R. Civ. P. 23. The parties represented that there was no readily accessible list of the potential class members in this case and that such a list likely could not be created without enormous effort and expenditure. Notice here involved a combination of individual mailing -- through the *Braille Monitor* and *Braille Forum* to tens of thousands of blind people -- and publication in three newspapers of national circulation: *The New York Times*, *Los Angeles Times*, and *USA Today*. Under these circumstances, individual notice was not required in order to satisfy the requirements of due process and Fed. R. Civ. P. 23.

### III. Attorneys' Fees and Costs

Class counsel have submitted an Unopposed Petition for an Award of Attorneys' Fees and Costs, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2). Specifically, class counsel request that the Court approve an award of attorneys' fees and costs by Defendants to the NFB in the amount of $900,000, the amount agreed to by the parties as part of the class action settlement.

The ADA provides that courts may award the prevailing party its "reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Rules 23(h)(1) and (2) require that notice and an opportunity to object be provided. In this case, the Notice sent pursuant to the Preliminary Approval Order included the amount of the fees and provided an opportunity to object and no class member has objected to the proposed fee award.

In evaluating a fee petition in a case such as this, the Court is to consider "the reasonableness of the hours spent and the hourly rate sought." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 529 (1st Cir. 1991) (quoting *In re Spillance*, 884 F.2d 642, 647

(1st Cir. 1989)). After due consideration of the filings of class counsel and the relevant case law cited therein, this Court finds that a fee award in the amount of $900,000 is well within the bounds of reasonableness under the circumstances of this case. The time spent by class counsel in litigating this complex case clearly was justified. In addition, the lodestar amount – calculated by multiplying these hours by reasonable prevailing rates – is almost twice the amount agreed upon in the settlement. The Court finds that the hourly rates charged by class counsel are commensurate with the rates charged by Boston attorneys of comparable experience in comparable matters and that the rates actually billed to the NFB were below those rates. In addition, the award sought is well below the actual amount of fees and costs paid by the NFB in connection with this litigation. For these reasons, the Court approves the fee award agreed to by the parties as part of the Settlement Agreement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. This Court has jurisdiction over the subject matter of this lawsuit and over all of the parties to the lawsuit, including the named Plaintiffs, all members of the class, and Defendants.

2. The Court adopts and incorporates the findings of the Preliminary Approval Order and hereby approves the Settlement Agreement as fair, reasonable and adequate in all respects. This is especially so in view of the complexity, expense and probable duration of further litigation, the risks of establishing liability, the intensive arm's length negotiations of experienced counsel and the reasonableness of the relief obtained, considering the range of possible outcomes and the attendant risks of litigation.

3. The Court overrules the single objection to the settlement and finds that each class member is bound by the Settlement Agreement, including its release.

4. The Court finds that the Notice published to the class satisfies the requirements of due process and Fed. R. Civ. P. 23.

5. The Court finds that the attorneys' fees and costs sought by class counsel are reasonable and approves an award of fees and costs, in the amount of $900,000, as agreed to by the parties.

6. The Court dismisses this lawsuit on the merits and with prejudice as to all claims in the lawsuit against all Defendants.

7. The Court attaches hereto as Exhibit 1 and incorporates into this Final Order and Judgment the terms of the Settlement Agreement.

8. The Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement.

It is so ordered.

Dated: 12/4/07

_____
U.S.D.J.

397837

13