UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.*,<br><br>    Plaintiffs<br><br>v.<br><br>CARDTRONICS, INC., *et al.*,<br><br>    Defendants | CIVIL ACTION NO. 03-11206-NMG |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
FINAL APPROVAL OF AMENDED AND RESTATED CLASS
ACTION SETTLEMENT AGREEMENT**

**INTRODUCTION**

Plaintiffs, Commonwealth of Massachusetts, National Federation of the Blind ("NFB"), and Jennifer Bose, Bryan Bashin, Robert Crowley, Norma Crosby, Dwight Sayer, Terri Uttermohlen and Raymond Wayne (the "Individual Plaintiffs"), and Defendants, Cardtronics, Inc. and Cardtronics USA, Inc. (jointly "Cardtronics"), hereby submit this Memorandum in Support of their Joint Motion for Final Approval of Amended and Restated Class Action Settlement Agreement. The Court granted preliminary approval to the settlement on December 2, 2014, and scheduled the Fairness Hearing for May 7, 2015. (Order Granting Joint Motion for Preliminary Approval of Amended and Restated Class Action Settlement and for Fairness Hearing ("Preliminary Approval Order") at 14 (Dkt. 391)).

Following preliminary approval, the parties provided notice of the settlement according to the notice plan approved by the Court. Since then, the Court has not received

any objections to the settlement and, therefore, the parties now request that the Court approve the Amended and Restated Class Action Settlement Agreement ("Amended Agreement").

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     History of Litigation and Recent Settlement Negotiations

Cardtronics currently owns and/or operates approximately 95,000 ATMs throughout the United States.  (Decl. of Michael E. Keller, attached as Ex. D to the Joint Motion for Preliminary Approval, ¶ 2).[1]  Approximately 40,000 of these ATMs are owned by Cardtronics and approximately 55,000 are owned by independent merchants who are customers of Cardtronics.  (Ex. B, ¶ 1).  In the underlying action that resulted in the original settlement in this class action, Plaintiffs alleged that ATMs owned and/or operated by Cardtronics were not accessible to the blind, in violation of the Americans with Disabilities Act and Massachusetts state law, and requested that Cardtronics' ATMs be made accessible to and independently useable by the blind through the use of voice-guidance technology.

An ATM with voice-guidance has a headphone jack into which a blind user can plug his or her headphones.  Software loaded on the ATM then provides an audio description of the machine so that a blind user knows the location of the various controls, and gives audio instructions allowing a blind user to independently withdraw money, check account balances and accomplish any other transactions offered through the ATM.  Thus, for an ATM to be accessible, it must be configured such that a blind user, through

---

[1] All references to exhibits, unless otherwise specified, are to the Exhibits to the Joint Motion for Preliminary Approval.

only touch and sound, can complete the same transactions that are available to a sighted user.

In June 2007, after four years of hard-fought litigation and several failed attempts at settlement, the parties reached a detailed class action settlement agreement ("Settlement Agreement"). On December 4, 2007, the Court issued its Final Order granting final approval to the Settlement Agreement and retaining jurisdiction over all matters relating to the interpretation and enforcement of the Settlement Agreement. (Dkt. 279 at 12-13). In the Settlement Agreement, Cardtronics agreed to make virtually all Cardtronics-owned ATMs voice-guided. In addition, the Settlement Agreement required that each ATM have Braille signage in a form agreed to by the parties. Cardtronics also agreed to cease entering into new contracts with merchants who maintained inaccessible ATMs and to encourage its merchant customers to make their machines accessible. Finally, Cardtronics agreed to ensure that 90% of transactions on all ATMs covered by the Settlement Agreement would occur on voice-guided machines.

The parties included a detailed definition of "voice-guidance" in the Settlement Agreement in an effort to ensure that blind users would receive specific and organized audible instructions to complete the essential steps of a given transaction. Cardtronics' fleet, however, includes many different makes and models of ATMs, with varying capacities to be upgraded to meet this definition, and the results of Plaintiffs' compliance testing in 2008 and early 2009 led to disputes between the parties concerning the degree to which the ATMs met the requirements of the Settlement Agreement. In accordance with the dispute resolution provision of the Settlement Agreement, Plaintiffs initiated discussions with Cardtronics to address this issue. The parties met several times between

May and December 2009, during the course of which Cardtronics acknowledged that it had failed to meet its obligations under the Settlement Agreement and that customized voice-guidance software would be required to bring various ATM makes and models into compliance. In December 2009, Plaintiffs tested and approved multiple versions of voice-guidance software that Cardtronics developed in an effort to come into compliance. During the following several months, the parties then negotiated a Remediation Plan that was approved by the Court on November 3, 2010. (Dkt. 288). Under the Remediation Plan, Cardtronics was given additional time to bring its fleet into compliance with the requirements of the Settlement Agreement and, among other obligations, was required to install the NFB-approved software to the vast majority of its owned machines by December 31, 2010.

Alleging that Cardtronics failed to meet the requirements of the Remediation Plan, Plaintiffs filed a contempt motion on July 29, 2011. (Dkt. 290). In December 2011, the Court found that contempt sanctions against Cardtronics were warranted, but provided Cardtronics an opportunity to avoid the imposition of a fine based upon Cardtronics' representation that it would fully comply with all of its obligations under the Remediation Plan no later than March 15, 2012. (Dkt. 308).

During the months following the Court's March 15, 2012 deadline for compliance, Plaintiffs' testing led Plaintiffs to conclude that Cardtronics had fallen short of meeting its obligations with respect to voice-guidance. In addition, Cardtronics installed Braille signage across its entire fleet that it believed complied with the 2010 ADA accessibility guidelines, but that Plaintiffs' contended did not meet the requirements of the Settlement

Agreement and Remediation Plan.[2] Plaintiffs therefore filed a second motion for contempt in August 2012. (Dkt. 312). In addition to requesting contempt sanctions, Plaintiffs requested – and Cardtronics agreed – that the Court appoint a special master to assist the parties in designing and implementing a more reliable inspection and testing program (with input from blind users), to assist the parties in designing and implementing a more effective compliance reporting protocol and to recommend findings of fact to the Court for purposes of imposing contempt sanctions for any continuing violations. (Dkt. 312 at 2-3).

On March 21, 2013, the Court issued an Order finding that contempt sanctions against Cardtronics remained warranted, but stating further that the extent of Cardtronics' violations remained to be ascertained. (Dkt. 338). Following a hearing, the Court appointed David R. Cohen as Special Master on May 22, 2013, and directed that he (1) make a specific finding concerning the number of non-complaint ATMs as of March 15, 2012, (2) estimate the degree by which Cardtronics' failure to comply reduced the ability of blind users to access the non-compliant ATMs, and (3) recommend a specific monetary sanction consistent with the Court's Orders and relevant case law. (Dkt. 351).

In accordance with the Court's May 22, 2013 Order, the parties had an initial conference with the Special Master in Boston on June 28, 2013. The parties and the Special Master then met at Cardtronics' laboratory in Frisco, Texas on July 29-30, 2013, to review and test the voice-guidance on ATM models that were representative of the ATMs in the field, and to come to an agreement on what information Cardtronics would include in future monthly reports.

---

[2] The signage required by the Settlement Agreement includes Braille on the headphone jack, the card slot, the receipt chute and the cash dispenser. (Dkt. 279 at Exhibit 1B).

After the testing in Frisco was completed, the parties exchanged their respective interpretations of the test results. It became apparent during this process that the parties disagreed concerning how compliance with the "voice-guidance" requirements of the Settlement Agreement and Remediation Plan should be measured. In addition to these factual disputes, which were quite complex given the size and makeup of Cardtronics' fleet, a threshold legal issue that remained unresolved was whether the resolution of these disputed issues would require a jury trial.

The parties briefed these and other relevant legal issues and met with the Special Master in Boston on November 20 and 21, 2013, to discuss their respective positions and to explore the possibility of resolving the contempt proceeding through an amended settlement agreement. All parties expressed willingness to enter into settlement discussions in an effort to avoid further and protracted litigation.

The parties participated in full-day mediation sessions with the Special Master in Washington, D.C., on February 27, February 28, March 6 and March 7, 2014, but were unable to reach consensus on a number of issues. The parties continued their negotiations in full-day sessions with the Special Master in Boston on April 8 and 9, 2014, and ultimately reached an agreement in principle on May 28, 2014. The parties then drafted and executed an Amended and Restated Settlement Agreement. In summary, the parties have agreed as follows:[3]

- Cardtronics' future compliance will be measured against clear and comprehensive voice-guidance standards (Ex. A, ¶¶ 3.1, 3.2 and 3.7);

---

[3] This summary is not intended to establish any rights or obligations different from the Amended and Restated Settlement Agreement.

- Cardtronics will develop software for its ATMs that satisfies these voice-guidance standards (Ex. A, ¶5.1.1);

- A blind tester selected by the NFB will participate in the evaluation of the software for compliance with these voice-guidance standards (Ex. A, ¶ 5.1.1);

- The Special Master, acting as "Arbiter," will determine whether the software satisfies these voice-guidance standards (Ex. A, ¶ 5.1.1);

- Only software approved by the Arbiter will qualify as satisfying these voice-guidance standards (Ex. A, ¶¶ 5.1.1 and 5.1.8);

- Cardtronics will pay the reasonable fees and expenses incurred by the Arbiter and the NFB-selected blind tester during the software testing and approval process (Ex. A, ¶ 18.3);

- Cardtronics will install approved voice-guidance software on, and affix NFB-approved Braille decals to, its ATMs no later than March 31, 2017 (Ex. A, ¶ 6);

- Cardtronics will divest itself of any ATM in its existing fleet that has not been upgraded with approved voice-guidance software by March 31, 2017 (Ex. A, ¶ 6);

- With respect to ATMs acquired after the date of the Amended Agreement, Cardtronics will provide approved Braille decals and install approved software within clearly-defined time frames following acquisition (Ex. A, ¶ 7);

- All ATMs covered by the Amended Agreement will have tactilely discernable controls (Ex. A, ¶ 3.3);

- Cardtronics will inspect all Cardtronics-owned, branded ATMs at least once every nine months and all Cardtronics-owned, non-branded ATMs at least once every 18 months during the term of the Amended Agreement (Ex. A, ¶¶ 10.1.1 and 10.1.2);

- Cardtronics will inspect at least 1,000 merchant-owned ATMs at least once every 12 months (Ex. A, ¶ 10.1.3);

- The NFB may conduct up to 600 inspections of Cardtronics ATMs in the field at Cardtronics' expense (Ex. A, ¶ 10.2);

- Cardtronics will provide Plaintiffs and the Arbiter with comprehensive monthly reports on the status of its compliance and quarterly reports on the composition of its fleet (Ex. A, ¶ 11);

- Cardtronics will maintain on its website an accessible ATM locator through which consumers can determine where particular ATMs in Cardtronics' fleet are located and whether each ATM is voice-guided (Ex. A, ¶ 12);

- Cardtronics will establish an internal "Accessibility Center of Excellence" whose mission shall be to deliver industry-leading voice-guidance to consumers at ATMs in Cardtronics' fleet (Ex. A, ¶ 13);

- Cardtronics will pay $1,250,000 to the NFB to promote equal access for Blind persons (Ex. A, ¶ 18.1.1);

- Cardtronics will pay $250,000 to the Commonwealth of Massachusetts, to be used by the Attorney General to promote equal access for Blind persons or other individuals with disabilities (Ex. A, ¶ 18.1.2);

- The Arbiter will resolve all disputes concerning Cardtronics' compliance with the Amended Agreement (Ex. A, ¶ 21.3);

- The Arbiter will assess liquidated damages if he finds that Cardtronics has breached any of its obligations under the Amended Agreement (Ex. A, ¶ 21.4);

- Plaintiffs will release all claims concerning Cardtronics' compliance with the Settlement Agreement and Remediation Plan (Ex. A, ¶ 16.1.1);

- The NFB and the Individual Plaintiffs will release all claims for monetary damages of any kind, including punitive or exemplary damages, and any claims for contempt sanctions (Ex. A, ¶ 16.1.2);

- Class members (except for the named Plaintiffs) will not release claims for monetary damages unrelated to Cardtronics' alleged contempt, including punitive or exemplary damages (Ex. A, ¶ 16.1.3);

- Cardtronics will pay the reasonable attorneys' fees and expenses incurred by class counsel in connection with negotiating the Amended Agreement and obtaining final approval of the Amended Agreement by the Court, subject to the Court's approval of class counsel's petition for attorneys' fees and costs (Ex. A, ¶ 18.2); and

- Notice will be provided to class members (Ex. A, ¶ 2.3).

In the Amended Agreement, the parties have agreed to request the Court to stay all pending motions and, upon final approval of the Amended Agreement, dismiss all such motions as moot.  (Ex. A, ¶ 2.1).  In addition, the parties have agreed that the Court should retain jurisdiction for purposes of enforcing the decisions of the Arbiter concerning compliance with the Amended Agreement.  (Ex. A, ¶ 21.3.5).

## II.     Preliminary Approval

On November 24, 2014, the parties filed their Joint Motion for Preliminary Approval of Amended and Restated Class Action Settlement Agreement and for Fairness Hearing.  The Court granted that motion and scheduled the Fairness Hearing for May 7, 2015.

## III.    Notice

The parties provided notice to the class in accordance with the Court's Preliminary Approval Order.  Specifically, the notice was posted on the websites of Cardtronics and the NFB on or about December 8, 2014. (Declaration of Sharon Krevor-Weisbaum, attached as Exhibit B to the Joint Motion for Final Approval of Amended and Restated Class Action Settlement Agreement, ¶¶ 2-3). On December 10, 2014, the National Council on Independent Living distributed the Notice to its email database of 3,854 recipients.  (*Id*. at ¶ 4).  In addition, on December 31, 2014, the National Disability Rights Network ("NDRN") sent the Notice by email to the Legal Director for each of the 57 Protection & Advocacy ("P&A") agencies throughout the country and, on January 5, 2015, NDRN also sent the Notice to the Executive Director of each P&A.  (*Id*. at ¶ 5.)  Finally, the Notice was published in the February 2015 edition of both *The Braille Forum* and *The Braille Monitor*. (*Id.* at ¶¶ 6-7).

## ARGUMENT

### I.     The Notice Satisfied Fed. R. Civ. P. 23(e) and Due Process

As set forth above, the parties have now implemented the notice program approved by this Court. For the reasons set forth in the parties' Joint Motion for Preliminary Approval of Amended and Restated Class Action Settlement Agreement and for Fairness Hearing and the Preliminary Approval Order, the parties request that this Court find that the notice program previously approved by the Court and now implemented by the parties was the best notice practicable under the circumstances and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

### II.    The Amended Agreement Should Be Granted Final Approval

A court may approve the settlement of a class action only upon finding that it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (same). The First Circuit has recognized a clear policy of encouraging settlements in class action cases, and has stated that "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'ship Co.*, 100 F.3d at 1043. As one court in this district observed, "[t]here is no single test in the First Circuit for determining fairness, reasonableness and adequacy of a proposed class action settlement." *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 72 (D. Mass. 2005) (quoting *In re Compact Disc Minimum Adver. Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)). Nevertheless, several courts in this district have considered the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),

*overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989), in assessing whether a settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*See In re Relafin*, 231 F.R.D. at 72-74 (analyzing fairness using *Grinnell* factors); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 95-98 (D. Mass. 2005) (same).

Based on the evidence and arguments set forth in the parties' Memorandum in Support of Joint Motion for Preliminary Approval of Amended and Restated Class Action Settlement Agreement and for Fairness Hearing, the Court preliminarily held that the Amended Agreement met this test, and that the Settlement Agreement was fair, reasonable and adequate. Based upon the same evidence and arguments (which are incorporated herein by reference), and the fact that there have been no objections by class members, the parties submit that it is now appropriate for the Court to grant final approval of the Amended Agreement.

## **CONCLUSION**

For all of the reasons set forth above, the parties respectfully request that this Court grant this motion and: (1) approve the Amended Agreement as fair, reasonable and adequate; (2) find that the notice provided by the parties satisfied the requirements of Fed. R. Civ. P. 23 and due process; (3) dismiss as moot all pending motions (4) incorporate the terms of the Amended Agreement into the final Order approving the Amended Agreement

and (5) retain jurisdiction over this matter for purposes of enforcing the decisions of the court-appointed Arbiter concerning compliance with the Amended Agreement.

Respectfully submitted,

By the Parties:

| PLAINTIFF COMMONWEALTH OF MASSACHUSETTS, MAURA HEALEY, ATTORNEY GENERAL<br><br>*/s/ Genevieve C. Nadeau*<br>Genevieve C. Nadeau, BBO # 677566<br>Assistant Attorney General<br>Office of the Attorney General<br>One Ashburton Place<br>Boston, MA 02108<br>(617) 727-2200<br>genevieve.nadeau@state.ma.us | DEFENDANT CARDTRONICS, INC.<br><br>*/s/ Douglas P. Lobel*<br>Douglas P. Lobel (admitted *pro hac vice*)<br>David A. Vogel (admitted *pro hac vice*)<br>COOLEY LLP<br>One Freedom Square&#124;Reston Town Center<br>11951 Freedom Drive<br>Reston, Virginia 20190<br>(703) 720-7000<br>dlobel@cooley.com<br>dvogel@cooley.com |
|---|---|
| PLAINTIFFS NATIONAL FEDERATION OF THE BLIND AND THE INDIVIDUAL PLAINTIFFS<br><br>*/s/ Christine M. Netski*<br>Christine M. Netski, BBO #546936<br>Anthony M. Doniger, BBO #129420<br>Sugarman, Rogers, Barshak &<br>    Cohen, P.C.<br>101 Merrimac Street<br>Boston, MA 02114-4737<br>(617) 227-3030<br>netski@srbc.com<br>doniger@srbc.com | */s/ Sharon Krevor-Weisbaum*<br>Sharon Krevor-Weisbaum (admitted<br> *pro hac vice*)<br>Brown, Goldstein & Levy, LLP<br>120 E. Baltimore Street, Suite 1700<br>Baltimore, MD 21202<br>(410) 962-1030<br>skw@browngold.com |

| | |
|---|---|
| */s/ Timothy P. Fox*<br>Timothy P. Fox (admitted *pro hac vice*)<br>Amy F. Robertson (admitted *pro hac vice*)<br>Civil Rights Education and Enforcement Center<br>104 Broadway, Suite 400<br>Denver, CO 80203<br>tfox@creeclaw.org<br>arobertson@creeclaw.org | |

DATED:     April 24, 2015

## CERTIFICATE OF SERVICE

      I, Christine M. Netski, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                           /s/ *Christine M. Netski*
                                                           netski@srbc.com

DATED:       April 24, 2015