UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.*,<br><br>    Plaintiffs<br><br>v.<br><br>CARDTRONICS, INC., *et al.*,<br><br>    Defendants | CIVIL ACTION NO. 03-11206-NMG |

## ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF AMENDED AND RESTATED CLASS ACTION SETTLEMENT AGREEMENT AND PLAINTIFFS' UNOPPOSED PETITION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

Plaintiffs, Commonwealth of Massachusetts, National Federation of the Blind ("NFB"), and Jennifer Bose, Bryan Bashin, Robert Crowley, Norma Crosby, Dwight Sayer, Terri Uttermohlen and Raymond Wayne (the "Individual Plaintiffs"), and Defendants, Cardtronics, Inc. and Cardtronics USA, Inc. (jointly "Cardtronics"), seek final approval of the Amended and Restated Class Action Settlement Agreement ("Amended Agreement") that was approved preliminarily by this Court on December 2, 2014. *See* Order Granting Joint Motion for Preliminary Approval of Proposed Amended and Restated Class Action Settlement Agreement ("Preliminary Approval Order," Dkt. 391). Specifically, Plaintiffs have moved the Court for an Order: (1) finding that the Amended Agreement is fair, reasonable and adequate; (2) finding that the Notice published to the class satisfies the requirements of due process and Fed. R. Civ. P. 23; (3) approving an award of attorneys' fees and costs to Plaintiffs in the amount of $397,536.70, plus additional reasonable fees and costs incurred by Plaintiffs between March 1, 2015 and May 7,

2015, as agreed to by the parties; (4) attaching and incorporating by reference the terms of the Amended Agreement; (5) dismissing all pending motions in this action; and (6) retaining jurisdiction over this matter for purposes of enforcing the decisions of the court-appointed Arbiter concerning compliance with the Amended Agreement.

## I.    History of Litigation and Recent Settlement Negotiations

Cardtronics currently owns and/or operates approximately 95,000 ATMs throughout the United States.  Approximately 40,000 of these ATMs are owned by Cardtronics and approximately 55,000 are owned by independent merchants who are customers of Cardtronics.  In the underlying action that resulted in the original settlement in this class action, Plaintiffs alleged that ATMs owned and/or operated by Cardtronics were not accessible to the blind, in violation of the Americans with Disabilities Act and Massachusetts state law, and requested that Cardtronics' ATMs be made accessible to and independently useable by the blind through the use of voice-guidance technology.

An ATM with voice-guidance has a headphone jack into which a blind user can plug his or her headphones.  Software loaded on the ATM then provides an audio description of the machine so that a blind user knows the location of the various controls, and gives audio instructions allowing a blind user to independently withdraw money, check account balances and accomplish any other transactions offered through the ATM.  Thus, for an ATM to be accessible, it must be configured such that a blind user, through only touch and sound, can complete the same transactions that are available to a sighted user.

In June 2007, after four years of hard-fought litigation and several failed attempts at settlement, the parties reached a detailed class action settlement agreement ("Settlement Agreement").  On December 4, 2007, the Court issued its Final Order granting final approval to

the Settlement Agreement and retaining jurisdiction over all matters relating to the interpretation

and enforcement of the Settlement Agreement. (Dkt. 279 at 12-13). In the Settlement Agreement,

Cardtronics agreed to make virtually all Cardtronics-owned ATMs voice-guided. In addition, the

Settlement Agreement required that each ATM have Braille signage in a form agreed to by the

parties. Cardtronics also agreed to cease entering into new contracts with merchants who

maintained inaccessible ATMs and to encourage its merchant customers to make their machines

accessible. Finally, Cardtronics agreed to ensure that 90% of transactions on all ATMs covered by

the Settlement Agreement would occur on voice-guided machines.

The parties included a detailed definition of "voice-guidance" in the Settlement Agreement

in an effort to ensure that blind users would receive specific and organized audible instructions to

complete the essential steps of a given transaction. Cardtronics' fleet, however, includes many

different makes and models of ATMs, with varying capacities to be upgraded to meet this

definition, and the results of Plaintiffs' compliance testing in 2008 and early 2009 led to disputes

between the parties concerning the degree to which the ATMs met the requirements of the

Settlement Agreement. In accordance with the dispute resolution provision of the Settlement

Agreement, Plaintiffs initiated discussions with Cardtronics to address this issue. The parties met

several times between May and December 2009, during the course of which Cardtronics

acknowledged that it had failed to meet its obligations under the Settlement Agreement and that

customized voice-guidance software would be required to bring various ATM makes and models

into compliance. In December 2009, Plaintiffs tested and approved multiple versions of

voice-guidance software that Cardtronics developed in an effort to come into compliance. During

the following several months, the parties then negotiated a Remediation Plan that was approved by

the Court on November 3, 2010. (Dkt. 288). Under the Remediation Plan, Cardtronics was given

3

additional time to bring its fleet into compliance with the requirements of the Settlement

Agreement and, among other obligations, was required to install the NFB-approved software to the

vast majority of its owned machines by December 31, 2010.

Alleging that Cardtronics failed to meet the requirements of the Remediation Plan,

Plaintiffs filed a contempt motion on July 29, 2011. (Dkt. 290). In December 2011, the Court

found that contempt sanctions against Cardtronics were warranted, but provided Cardtronics an

opportunity to avoid the imposition of a fine based upon Cardtronics' representation that it would

fully comply with all of its obligations under the Remediation Plan no later than March 15, 2012.

(Dkt. 308).

During the months following the Court's March 15, 2012 deadline for compliance,

Plaintiffs' testing led Plaintiffs to conclude that Cardtronics had fallen short of meeting its

obligations with respect to voice-guidance. In addition, Cardtronics installed Braille signage

across its entire fleet that it believed complied with the 2010 ADA accessibility guidelines, but that

Plaintiffs contended did not meet the requirements of the Settlement Agreement and Remediation

Plan.[2] Plaintiffs therefore filed a second motion for contempt in August 2012. (Dkt. 312). In

addition to requesting contempt sanctions, Plaintiffs requested – and Cardtronics agreed – that the

Court appoint a special master to assist the parties in designing and implementing a more reliable

inspection and testing program (with input from blind users), to assist the parties in designing and

implementing a more effective compliance reporting protocol and to recommend findings of fact

to the Court for purposes of imposing contempt sanctions for any continuing violations. (Dkt. 312

at 2-3).

---

[2] The signage required by the Settlement Agreement includes Braille on the headphone jack, the card slot, the receipt chute and the cash dispenser. (Dkt. 279 at Exhibit 1B).

On March 21, 2013, the Court issued an Order finding that contempt sanctions against Cardtronics remained warranted, but stating further that the extent of Cardtronics' violations remained to be ascertained. (Dkt. 338). Following a hearing, the Court appointed David R. Cohen as Special Master on May 22, 2013, and directed that he (1) make a specific finding concerning the number of non-compliant ATMs as of March 15, 2012, (2) estimate the degree by which Cardtronics' failure to comply reduced the ability of blind users to access the non-compliant ATMs, and (3) recommend a specific monetary sanction consistent with the Court's Orders and relevant case law. (Dkt. 351).

In accordance with the Court's May 22, 2013 Order, the parties had an initial conference with the Special Master in Boston on June 28, 2013. The parties and the Special Master then met at Cardtronics' laboratory in Frisco, Texas on July 29-30, 2013, to review and test the voice-guidance on ATM models that were representative of the ATMs in the field, and to come to an agreement on what information Cardtronics would include in future monthly reports.

After the testing in Frisco was completed, the parties exchanged their respective interpretations of the test results. It became apparent during this process that the parties disagreed concerning how compliance with the "voice-guidance" requirements of the Settlement Agreement and Remediation Plan should be measured. In addition to these factual disputes, which were quite complex given the size and makeup of Cardtronics' fleet, a threshold legal issue that remained unresolved was whether the resolution of these disputed issues would require a jury trial.

The parties briefed these and other relevant legal issues and met with the Special Master in Boston on November 20 and 21, 2013, to discuss their respective positions and to explore the possibility of resolving the contempt proceeding through an amended settlement agreement. All

parties expressed willingness to enter into settlement discussions in an effort to avoid further and protracted litigation.

The parties participated in full-day mediation sessions with the Special Master in Washington, D.C., on February 27, February 28, March 6 and March 7, 2014, but were unable to reach consensus on a number of issues.  The parties continued their negotiations in full-day sessions with the Special Master in Boston on April 8 and 9, 2014, and ultimately reached an agreement in principle on May 28, 2014.  The parties then drafted and executed an Amended and Restated Settlement Agreement.  In summary, the parties have agreed as follows:

- Cardtronics' future compliance will be measured against clear and comprehensive voice-guidance standards;

- Cardtronics will develop software for its ATMs that satisfies these voice-guidance standards;

- A blind tester selected by the NFB will participate in the evaluation of the software for compliance with these voice-guidance standards;

- The Special Master, acting as "Arbiter," will determine whether the software satisfies these voice-guidance standards;

- Only software approved by the Arbiter will qualify as satisfying these voice-guidance standards;

- Cardtronics will pay the reasonable fees and expenses incurred by the Arbiter and the NFB-selected blind tester during the software testing and approval process;

- Cardtronics will install approved voice-guidance software on, and affix NFB-approved Braille decals to, its ATMs no later than March 31, 2017;

- Cardtronics will divest itself of any ATM in its existing fleet that has not been upgraded with approved voice-guidance software by March 31, 2017;

- With respect to ATMs acquired after the date of the Amended Agreement, Cardtronics will provide approved Braille decals and install approved software within clearly-defined time frames following acquisition;

- All ATMs covered by the Amended Agreement will have tactilely discernable controls;

- Cardtronics will inspect all Cardtronics-owned, branded ATMs at least once every nine months and all Cardtronics-owned, non-branded ATMs at least once every 18 months during the term of the Amended Agreement;

- Cardtronics will inspect at least 1,000 merchant-owned ATMs at least once every 12 months);

- The NFB may conduct up to 600 inspections of Cardtronics ATMs in the field at Cardtronics' expense;

- Cardtronics will provide Plaintiffs and the Arbiter with comprehensive monthly reports on the status of its compliance and quarterly reports on the composition of its fleet;

- Cardtronics will maintain on its website an accessible ATM locator through which consumers can determine where particular ATMs in Cardtronics' fleet are located and whether each ATM is voice-guided;

- Cardtronics will establish an internal "Accessibility Center of Excellence" whose mission shall be to deliver industry-leading voice-guidance to consumers at ATMs in Cardtronics' fleet;

7

- Cardtronics will pay $1,250,000 to the NFB to promote equal access for Blind persons;

- Cardtronics will pay $250,000 to the Commonwealth of Massachusetts, to be used by the Attorney General to promote equal access for Blind persons or other individuals with disabilities;

- The Arbiter will resolve all disputes concerning Cardtronics' compliance with the Amended Agreement;

- The Arbiter will assess liquidated damages if he finds that Cardtronics has breached any of its obligations under the Amended Agreement;

- Plaintiffs will release all claims concerning Cardtronics' compliance with the Settlement Agreement and Remediation Plan;

- The NFB and the Individual Plaintiffs will release all claims for monetary damages of any kind, including punitive or exemplary damages, and any claims for contempt sanctions;

- Class members (except for the named Plaintiffs) will not release claims for monetary damages unrelated to Cardtronics' alleged contempt, including punitive or exemplary damages; and

- Cardtronics will pay the reasonable attorneys' fees and expenses incurred by plaintiffs' counsel in connection with negotiating the Amended Agreement and obtaining final approval of the Amended Agreement by the Court.

In the Amended Agreement, the parties have agreed that the Court shall dismiss all pending motions as moot and that the Court shall retain jurisdiction for purposes of enforcing the decisions of the Arbiter concerning compliance with the Amended Agreement.

## II.   Preliminary Approval

As mentioned, on December 2, 2014, this Court granted the parties' Joint Motion for Preliminary Approval of Proposed Amended and Restated Class Action Settlement Agreement and for a Fairness Hearing and scheduled a Fairness Hearing on the proposed Amended Agreement for May 7, 2015. In the Preliminary Approval Order, the Court approved the parties' proposed plan for notifying class members of the Amended Agreement, as well as the notice to be utilized for this purpose ("Notice").

## III.   Notice to the Class

Following this Court's preliminary approval of the Amended Agreement, the parties implemented the approved notice program. Specifically, the Notice was posted on the websites of Cardtronics and the NFB on or about December 8, 2014. On December 10, 2014, the National Council on Independent Living distributed the Notice to its email database of 3,854 recipients. In addition, on December 31, 2014, the National Disability Rights Network ("NDRN") sent the Notice by email to the Legal Director for each of the 57 Protection & Advocacy ("P&A") agencies throughout the country and, on January 5, 2015, NDRN also sent the Notice to the Executive Director of each P&A. Finally, the Notice was published in the February 2015 edition of both *The Braille Forum* and *The Braille Monitor*.

This Court has not received any objections from class members to the Amended Agreement.

9

## DISCUSSION

### I.   The Amended Agreement Is Granted Final Approval

A court may approve the settlement of a class action only upon finding that it is "fair,

reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *see also City P'ship Co. v. Atlantic Acquisition

Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (same).  The First Circuit has recognized a clear

policy of encouraging settlements in class action cases, and has stated that "[w]hen sufficient

discovery has been provided and the parties have bargained at arms-length, there is a presumption

in favor of the settlement." *City P'ship Co.*, 100 F.3d at 1043.  As one court in this district

observed, "[t]here is no single test in the First Circuit for determining fairness, reasonableness and

adequacy of a proposed class action settlement." *In re Relafen Antitrust Litigation*, 231 F.R.D. 52,

72 (D. Mass. 2005) (quoting *In re Compact Disc Minimum Adver. Price Antitrust Litig.*, 216

F.R.D. 197, 206 (D. Me. 2003)).  Nevertheless, several courts in this district have considered the

following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),

*overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989), in assessing whether a

settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the
> reaction of the class to settlement; (3) the stage of the proceedings and
> the amount of discovery completed; (4) the risks of establishing liability;
> (5) the risks of establishing damages; (6) the risks of maintaining the class
> action through trial; (7) the ability of the defendants to withstand a greater
> judgment; (8) the range of reasonableness of the settlement fund in light
> of the best possible recovery; (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant risks
> of litigation.

*See In re Relafen*, 231 F.R.D. at 72-74 (analyzing fairness using *Grinnell* factors); *In re Lupron*

*Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 95-98 (D. Mass. 2005) (same).  An analysis of the

*final*                                                          4/24/15

*Grinnell* factors that are relevant in this case clearly supports ~~preliminary~~ approval of the

Amended Agreement.

For all of the reasons set forth in the Court's Preliminary Approval Order, an analysis of

these factors strongly supports this Court's final approval of the Amended Agreement as fair,

reasonable and adequate.

## II.     Notice to the Class

Rule 23(e)(1) states that "notice of the proposed dismissal or compromise shall be given to

all members of the class in such manner as the court directs."  The notice must satisfy Rule 23, as

well as due process requirements.  *Cf. Besinga v. United States*, 923 F.2d 133, 136-37 (9th Cir.

1991) (noting that the requirements of due process and Fed. R. Civ. P. 23 are similar).  "[I]t is the

court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class

members."  *Reppert v. Marvin Lumber and Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) (citations

omitted).  "The court has complete discretion in determining what constitutes a reasonable notice

scheme, both in terms of how notice is given and what it contains."  7B Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure*, § 1797.6 (3d ed. 2005).  "When individual

notice is infeasible, notice by publication in a newspaper of national circulation . . . is an

acceptable substitute."  *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004).

This Court finds that the notice program approved in its Preliminary Approval Order and

now implemented by the parties was the best notice practicable under the circumstances and

satisfies the requirements of due process and Fed. R. Civ. P. 23.  The parties represented that there

was no readily accessible list of the potential class members in this case and that such a list likely

could not be created without enormous effort and expenditure.  Nevertheless, through publication

of the Notice in the *Braille Monitor* and *Braille Forum*, the parties likely provided notice to tens of

11

thousands of blind individuals since those publications are from organizations specifically made up of blind members, and focused on the issues of, blind individuals. The other organizations to whom the Notice was sent include all of the Protection and Advocacy Systems around the United States, federally-funded nonprofit corporations with a mandate to advocate for the rights of individuals with disabilities, all Centers for Independent Living (federally-funded, nonprofit corporations that provide services to maximize the independence of individuals with disabilities) and a number of disability rights organizations. Providing the Notice to these organizations likely resulted in reaching many additional blind individuals, including those who are not involved in any of the mainstream blindness organizations.

This Court also finds that the content of the Notice complies with Rule 23 and due process. "[T]he notice should be designed to inform each class member of what is happening in the action and what the consequences of the dismissal or compromise may be." Wright & Miller, *supra*, § 1797.6. The Notice met this standard, as it advised class members, in plain language, of:

- The nature of the case;

- The terms of the Amended Agreement, including the relief obtained and the class claims released by the Amended Agreement;

- The deadline and method for objecting to the Amended Agreement;

- The date and location of the final approval hearing;

- Contact information for class counsel; and

- Instructions on how to access the case docket via PACER or in person at the courthouse.

12

**III.    Attorneys' Fees and Costs**

Plaintiffs' counsel have submitted an Unopposed Petition for an Award of Attorneys' Fees

and Costs, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2). Specifically, Plaintiffs' counsel request

that the Court approve an award of attorneys' fees and costs in the amount of $397,536.70, plus

additional reasonable fees and costs incurred by Plaintiffs between March 1, 2015 and May 7,

2015, as agreed to by the parties.

In evaluating a fee petition in a case such as this, the Court is to consider "the

reasonableness of the hours spent and the hourly rate sought." *Weinberger v. Great Northern*

*Nekoosa Corp.*, 925 F.2d 518, 529 (1st Cir. 1991) (quoting *In re Spillance*, 884 F.2d 642, 647 (1st

Cir. 1989)). After due consideration of the filings of Plaintiffs' counsel and the relevant case law

cited therein, this Court finds that a fee award in the amount of $397,536.70 is within the bounds of

reasonableness under the circumstances of this case. The time spent by Plaintiffs' counsel in

litigating this phase of this complex case clearly was justified. The Court also finds that the rates

charged by Plaintiffs' counsel are commensurate with the rates charged by Boston attorneys of

comparable experience in comparable matters. For these reasons, the Court approves the fee

award agreed to by the parties in accordance with the Amended Agreement.

**IT IS HEREBY ORDERED AND DECREED THAT:**

1.    This Court has jurisdiction over the subject matter of this lawsuit and over all of the

parties to the lawsuit, including the named Plaintiffs, all members of the class and Defendants.

2.    The Court adopts and incorporates the findings of the Preliminary Approval Order

and hereby approves the Amended Agreement as fair, reasonable and adequate in all respects.

This is especially so in view of the complexity, expense and probable duration of further litigation,

the risks of establishing liability, the intensive negotiations of experienced counsel with the

13

assistance of the Special Master and the reasonableness of the relief obtained, particularly considering the range of possible outcomes and the attendant risks of continued litigation.

3.      The Court finds that the Notice published to the class satisfied the requirements of due process and Fed. R. Civ. P. 23.

4.      The Court finds that the attorneys' fees and costs sought by Plaintiffs' counsel are reasonable and approves an award of fees and costs, in the amount of $370,536.70, plus additional reasonable fees and costs incurred by Plaintiffs between March 1, 2015 and May 7, 2015, as agreed to by the parties.[1]

5.      The Court dismisses as moot all pending motions.

6.      The Court attaches hereto as Exhibit 1 and incorporates into this Order the terms of the Amended Agreement.

7.      The Court retains jurisdiction over this matter for purposes of enforcing the decisions of the court-appointed Arbiter concerning compliance with the Amended Agreement.

It is so ordered.


Dated: 5/7/15

Nathaniel M. Gorton
United States District Judge

---

[1] In order to recover fees and costs incurred between March 1, 2015 and May 7, 2015, Plaintiffs must submit a final invoice to Cardtronics by June 8, 2015.  Plaintiffs may seek relief from the Court if the parties are unable to agree that such additional fees and costs are reasonable.