UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.,* | |
|      Plaintiffs | |
| v. | CIVIL ACTION NO. 03-11206-NMG |
| CARDTRONICS, INC., *et al.,* | |
|      Defendants | |

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR ORDER APPROVING
AMENDMENT TO CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiffs Commonwealth of Massachusetts, National Federation of the Blind ("NFB"), and Jennifer Bose, Bryan Bashin, Robert Crowley, Norma Crosby, Dwight Sayer, Terri Uttermohlen and Raymond Wayne (the "Individual Plaintiffs") (collectively "Plaintiffs"), and Defendants, Cardtronics, plc (successor in interest to Cardtronics, Inc.) and Cardtronics USA, Inc. (jointly "Cardtronics") (all collectively the "Parties"), hereby submit this Memorandum in Support of their Joint Motion for Order Approving Amendment to Class Action Settlement Agreement.

## INTRODUCTION

The Parties are jointly moving for the Court's approval of an amendment (the "Amendment" attached to the Motion as Exhibit A) to the Parties' November 2014 Amended and Restated Class Action Settlement Agreement (the "Agreement", *see* ECF No. 403). The background to the Amendment is as follows.

This lawsuit and the resulting settlement concerns the implementation of certain hardware and software on Cardtronics' automated teller machines ("ATMs") to make them independently usable by blind people. After an initial settlement in 2007, this Court approved a restated and

significantly-revised settlement agreement that the Parties executed in late 2014.  That restated agreement imposed a compliance deadline of March 31, 2017.

Due to two events in late 2016, Cardtronics requested that the Plaintiffs agree to extend this deadline.  After consulting extensively with Plaintiffs, including providing detailed written information in response to Plaintiffs' questions, Cardtronics requested two extensions to the deadline.  Specifically, Cardtronics requested three additional months to install upgrades to ATMs that Cardtronics owns, and nine months for ATMs owned by third parties.  Cardtronics also asked to exempt certain ATMs from the Agreement due to a third party's decision to terminate its contract with Cardtronics.  After careful consideration, including the potential impact on Class Members and blind users, the Plaintiffs have consented to these requests.  The parties have also agreed to other modifications to the Agreement, including an extended period for Plaintiffs to test the ATMs and clarification that the Agreement's "Force Majeure" provision can only extend compliance deadlines with respect to ATMs that are affected by a force majeure event.  On June 30, 2017, the Parties executed the Amendment to the Agreement reflecting these bargained modifications.

Pursuant to Fed. R. Civ. P. 23(e), the Court should approve the Amendment to the Parties' settlement as "fair, reasonable and adequate."  First, the Amendment reflects certain circumstances that were unforeseeable and beyond Cardtronics' control.  Second, the Amendment does not delay blind users' ability to access the ATMs because, even if the Agreement had not been modified, ATMs would not have been made accessible on a faster schedule.  Finally, to the extent Cardtronics is deemed to have missed the extended deadline of June 30, it will owe liquidated damages retroactive to the original deadline, leaving the Parties in the same economic positions as if the Agreement had not been amended.

In addition to approving the Amendment, the Court should determine that notice is not required to be given to the Class.  It is black-letter law that this Court only requires notice of a settlement that **materially** harms Class Members' interests, such as their ability to submit claims or the amounts of payments they receive.  Here, for the reasons explained above, the Amendment will not prejudice blind users' ability to use ATMs and will appropriately amend the Agreement in an effort to gain full compliance. These factors, combined with the fact that no Class Members objected when the parties sought this Court's approval of the prior agreements between the parties, counsels against the need for notice.

For these reasons, the Parties respectfully request that the Court (1) approve the Parties' Amendment and (2) decline to require the Parties to provide notice to the Class of the Amendment.

## RELEVANT BACKGROUND

## I.    PROCEDURAL HISTORY

This matter has a long history, well reflected in many previous filings and Court orders. The Parties will summarize the relevant procedural history only briefly.

Plaintiffs filed this action in 2003 to make ATMs independently accessible to blind users through the introduction of "talking" ATMs, that is, a speech output through a standard headphone jack, a technology now known as "Voice Guidance."  The current Defendant, Cardtronics, acquired the lawsuit in 2005 when it purchased the ATM portfolio of the original Defendant, E*TRADE Access.[1]

In 2007, this Court approved a class-wide settlement agreement among Plaintiffs and Cardtronics.  *See*, Final Order and Judgment ("Final Order"), (December 4, 2007), ECF No. 279. The 2007 settlement defined the Class as "all persons who are Blind patrons of Covered ATMs."

---

[1]    E*TRADE has had no involvement in this lawsuit since that transaction in 2005.

*Id.* at Exhibit 1, p. 1.  To make its ATMs equally accessible to Class Members, Cardtronics agreed to install Voice Guidance ("VG") technology on its ATMs.  *Id.* at Section 3, pp. 8-11.  As part of the process for obtaining court approval of the settlement, the Parties provided notice nationwide to putative Class Members.   Final Order, pp. 8-9.  The Court received only one unexplained objection to the proposed settlement.  *Id.* at 9.

In 2010, the Parties negotiated modifications to that agreement. These modifications were incorporated into a Remediation Plan that was approved by the Court on November 3, 2010.  *See* Order Granting Joint Motion for Final Approval of Proposed Remediation Plan Concerning Class Action Settlement Agreement, (November 3, 2010), ECF No. 288.  In 2011, alleging that Cardtronics failed to meet the requirements of the Remediation Plan, Plaintiffs pursued contempt proceedings, during the course of which the Court in 2013 appointed a Special Master.  Working with the Special Master, the Parties negotiated and reached a substantially new agreement in November 2014, the "Amended and Restated Class Action Settlement Agreement."  *See*, Order Granting Joint Motion for Final Approval of Amended and Restated Class Action Settlement Agreement and Plaintiffs' Unopposed Petition for an Award of Attorneys' Fees and Costs, (May 7, 2015), ECF No. 403.  Because of the wholesale changes to the initial settlement that were reflected in the 2014 Agreement, the Parties again provided class-wide notice.  *Id.* at 9, 11-12.  No Class Members submitted any objections.  *Id.* at 9.  The Court approved the Agreement on May 7, 2015. *Id.* at 13-14.

## II.   CARDTRONICS' PERFORMANCE OF THE AGREEMENT

The Agreement created a robust process for certifying Cardtronics' VG technologies on its ATMs ("Certified VG"), and set new deadlines for Cardtronics to install Certified VG on its ATMs.

Under the Agreement (§ 5), the Special Master—along with an expert tester from the NFB—personally tested and made recommendations on Cardtronics' new VG systems at Cardtronics' facility in Texas, with repeated visits over a two-year period. As reflected in his Reports to the Court, the Special Master ultimately certified all of the different VG software that Cardtronics developed. *See* ECF Nos. 408-410, 412-421.

The Agreement (at § 6) required Cardtronics to install Certified VG on all of its domestic ATMs by March 31, 2017. Cardtronics worked diligently to meet that deadline since 2014 and through late 2016. *See* Declaration of Michael E. Keller ("Keller Decl."), ¶ 2, attached to the Motion as Exhibit B. The combined efforts of Plaintiffs and Cardtronics resulted in "best in class" VG on ATMs, including the deployment of this VG on thousands of non-Cardtronics ATMs. *Id.* ¶¶ 3-4.

## III. CHANGE IN CIRCUMSTANCES DUE TO EXIGENT EVENTS

In late 2016, two separate events resulted in a delay to Cardtronics' schedule for completing its installations by the March 31 deadline. *Id.* ¶ 5.

First, Cardtronics discovered that critical third-party software, on which most of its Certified VG software was based, contained latent but debilitating defects, rendering it essentially unusable on the ATMs. This problem affected the entire operation of an ATM, not merely its VG technology. Cardtronics undertook resource-extensive efforts for months to find new or to rewrite existing software. These efforts had a domino effect on Cardtronics' VG development, testing and installation plans, and even required additional, unanticipated testing by the Special Master and NFB tester. *Id.* ¶¶ 6-7.

Second, Cardtronics' largest customer (7-Eleven), for which Cardtronics had about 8,000 ATMs, terminated its contract with Cardtronics and outlined a schedule over time during which Cardtronics would have to remove its ATMs from 7-Eleven's stores. 7-Eleven's decision affected

Cardtronics' ability to upgrade or replace the VG on about a third of these ATMs.  These ATMs are older models, essentially at the end of their service life, and which are not mechanically capable of running compliant VG without new parts or without being replaced by new ATMs entirely.  Cardtronics had all along planned to completely replace these older ATMs with newer ATMs.  Thus, when the ATMs' manufacturer imposed a deadline to order new parts for these older ATMs, Cardtronics did not submit any orders for new parts.  However, 7-Eleven terminated the contract *after* this parts deadline passed.  Furthermore, Cardtronics has no opportunity to remove these ATMs, but they will have to continue in operation until 7-Eleven directs Cardtronics to remove them, which for some ATMs could happen into 2018.  Consequently, Cardtronics has been left with no way to make these older ATMs run compliant VG.  Cardtronics expects these ATMs to be completely out of service within about a year.  *Id.* ¶¶ 8-10.

In early 2017, including at a meeting with the Commonwealth and the NFB in February, Cardtronics described these exigencies and explained their impact on its schedule.  Cardtronics suggested a brief extension of three months, until June 30, 2017, to install Certified VG on the ATMs that it owns.  After the meeting, Cardtronics provided lengthy written responses to questions from the NFB seeking details about the circumstances.  Cardtronics did not adjust its schedule to meet this extended deadline; the extension reflected Cardtronics' belief as to when it thought it could install Certified VG on all of its ATMs.  If the extension had not been granted, the original (earlier) deadline would not have resulted in Cardtronics installing Certified VG any faster.  *Id.* ¶¶ 11-12.

Cardtronics also proposed to extend its deadline for upgrading ATMs owned by third-party merchants ("Merchant-Owned ATMs") by nine months, until December 31, 2017.  Merchant-Owned ATMs were proving to be slower to upgrade, due to an unexpected

intransigence by merchants to pay for the VG upgrades.  However, Cardtronics explained how an

industry-wide deadline later in the year should motivate more merchants to upgrade their ATMs.

Cardtronics explained that, without an extension of the March 31 deadline, it would have to

"divest" these ATMs from its network—eliminating any chance that these ATMs will ever have

Certified VG, and thus forcing Class Members to use less-accessible ATMs at the merchants'

stores.  *Id.* ¶ 13.

## IV.    AMENDMENT TO THE AGREEMENT

After negotiations from February through June this year, the Parties ultimately agreed to

several amendments to the Agreement.  The Parties executed the Amendment on June 30, 2017.

The Amendment does the following:

1.      Extends by three months, to June 30, 2017, Cardtronics' deadline to install

Certified VG on Cardtronics-Owned ATMs.  Amendment ¶ 4.1.  However, if Cardtronics does not

meet that extended deadline, Cardtronics would pay liquidated damages (set forth in Agreement

§ 21.4) retroactively to March 31, 2017.  Amendment ¶ 6.

2.      Extends by nine months to December 31, 2017, Cardtronics' deadline to install

Certified VG on Merchant-Owned ATMs.  Amendment ¶ 4.2.

3.      Excludes from the Agreement a specified list of "discontinuing" ATMs located in

7-Eleven stores, which are the ATMs that are not physically capable of being upgraded with

Certified VG, but which will have service lives ending within about a year.  Amendment ¶¶ 2 & 3.

4.      Defines a specific period in which NFB can test a sample of installed ATMs in the

field to determine compliance with the Agreement.  While the Agreement provided for

post-installation field testing (and Cardtronics payments to the NFB for these tests), the

Agreement did not provide a clear time period for that testing.  The Amendment provides this

period and specifies that Cardtronics cannot seek to close out the Agreement until after the testing period ends.  Amendment ¶¶ 7 & 8.

5.     Clarifies that the Agreement's "Force Majeure" provision (§ 23.1) extends the deadline for compliance only with respect to ATMs affected by a particular Force Majeure event.  Amendment ¶ 5.

## <u>STANDARD OF REVIEW</u>

Generally, the Court should approve a class-action settlement if it is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e); *City P'ship Co. v. Atl. Acquisition L.P.*, 100 F.3d 1041, 1043 (1st Cir. 1996).  This standard also applies when the Court reviews a settlement to a class-action settlement.  *Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010) (affirming district court's approval of 2008 amendment to 2000 settlement).[2]  This Court enjoys broad discretion to "balance [a settlement's] benefits and costs."  *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n*, 582 F.3d 30, 45 (1st Cir. 2009).

As part of that analysis, courts will determine if changed circumstances warrant amendments to the previously-approved class-wide settlements.  *In re Diet Drugs (Phentermine/ Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, No. 99-20593, 2010 WL 2735414, at *5 (E.D. Pa. July 2, 2010) ("*In re Diet Drugs 10th Amendment*") ("[O]ne 'purpose for which it is appropriate to approve such an amendment is adjusting for changed circumstances, particularly in

---

[2]     *See also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 07-CV-14845, 2009 WL 3757040, at *12 (E.D. Mich. Nov. 9, 2009) ("The same standard applies when considering an amendment to a previously-approved class settlement agreement."); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. CIV. A. 99-20593, 2003 WL 21641957, at *3 (E.D. Pa. Mar. 12, 2003), *aff'd sub nom. In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 385 F.3d 386 (3d Cir. 2004) ("In the final analysis we must decide whether the addition of the Sixth Amendment is fair, adequate and reasonable for the Class Members, considering that they already have been provided in the Settlement Agreement with benefits and rights found to be fair, adequate and reasonable.").

light of the parties' experience in implementing the agreement.'") (quotation omitted).  The

Parties' experience in performing the original agreement, and thus in recognizing a need to amend

it, may counsel in favor of court approval.  *E.g.*, *Rolland v. Patrick*, 562 F. Supp. 2d 176, 178 (D.

Mass. 2008), *aff'd sub nom. Voss*, 592 F.2d at 242 ("[A]lthough the fairness process is most

commonly invoked in lieu of a trial on the merits . . . the court believes it is equally relevant to a

settlement reached, as is true here, after considerable time has been spent unsuccessfully

implementing prior court-ordered remedies.").

Furthermore, when amendments result from arms-length negotiations between the parties,

courts typically defer to counsels' collective judgment as to the wisdom of the amendment.  *Int'l

Union*, 2009 WL 3757040, at *14 ("The informed and reasoned judgment of plaintiffs' counsel,

and their weighing of the relative risks and benefits of the proposed amendments, merit substantial

deference."); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig*.,

226 F.R.D. 498, 521, 524 (E.D. Pa. 2005) (approving proposed amendment, noting that the terms

of the amendment resulted from arms-length negotiations).

## ARGUMENT

## I.      THE COURT SHOULD APPROVE THE AMENDMENT

Although it is not clear that Court approval is required for the Amendment, out of an

abundance of caution, the Parties move for such approval.[3]

The Parties submit that the Amendment reflects a reasonable balance of interests under the

circumstances.  Significant progress was made by all of the Parties to create best-in-class Voice

---

[3]      When it approved the Agreement, the Court did not expressly state that its approval would
be required for any amendments.  To the contrary, Article 33 of the Agreement, entitled
"Amendments or Modifications," states in its entirety:  "This Agreement shall not be modified,
amended, changed or dissolved except in writing and signed by each of the Parties."
Conspicuously absent from Article 33 is any mention of the ***Court*** needing to approve an
amendment.

Guidance on Cardtronics' ATMs, as demonstrated by the Special Masters' regular Reports to this Court. Cardtronics was diligently working to meet the deadlines, but unpredictable events outside its control made timely performance impossible. The Parties negotiated a limited but appropriate extension.

Furthermore, the extension does not prejudice the Class. The three-month extension for Cardtronics-Owned ATMs does not delay the upgrades for those ATMs; said another way, if no extension were given, those ATMs could not have been upgraded any faster. The extension merely moves the deadline after which Cardtronics will have to pay liquidated damages for any ATMs that are not compliant (other than those affected by any Force Majeure events, pursuant to the Agreement). But if Cardtronics is deemed not to have met the extended deadline of June 30, Cardtronics would have to pay liquidated damages retroactively to the original deadline, leaving the Parties in the same position economically as if the extension did not exist.[4]

In addition, some aspects of the Amendment indirectly benefit Class Members. By extending the compliance date for Merchant-Owned ATMs, Cardtronics has more time to convince merchants to install Certified VG—and thus more opportunity for Class Members to enjoy the benefits of Certified VG on Merchant-Owned ATMs. If the original date were left, Cardtronics would have had to divest these ATMs from its network, essentially eliminating any hope that Certified VG would ever run on those ATMs. *Cf. In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 93 F. App'x 338, 340 (3d Cir. 2004) (approving amendment to extend back deadline requiring class members to complete a certain test in order to qualify for participation in the settlement). The Amendment also clarifies

---

4     Under Section 21 of the Agreement, the Special Master (in the role of an arbiter) has the power to determine if Cardtronics met the applicable deadline. Deadlines, such as June 30, can be deemed extended by other force majeure events pursuant to Section 23.

the Plaintiffs' rights regarding post-installation field testing, and clarifies the Force Majeure clause.

For these reasons, the Court should conclude the Amendment is "fair, reasonable and adequate."

## II.  NO NOTICE TO THE CLASS IS NECESSARY

The Parties also agree that notice to the Class of the Amendment is not required and thus the Court should not order the Parties to provide class-wide notice of the Amendment.

Class notice is not required when an amendment does not **_materially_** affect members' protected rights. *See, e.g.*, *In re Diet Drugs 10th Amendment*, 2010 WL 2735414, at *8 ("Initially, we note that we are dealing here with notice in connection with an amendment to the Settlement Agreement.  Notice in this circumstance is only required where the amendment to the settlement agreement would have a material adverse effect on the rights of class members."); *Int'l Union*, 2009 WL 3757040, at *15 ("Notice of an amendment to a class settlement and an opportunity to object may be required when the amendment will effectuate a material change in the settlement terms."); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2011 WL 4431090, at *7 (D. Kan. Sept. 22, 2011) (holding that written notice to each class member was required because the proposed amendment materially affected whether the class members would be adequately represented).

That is the case here.  The Amendment does not affect any Class Members' access to ATMs.  As just explained, the Amendment does not delay Cardtronics' implementation of Certified VG on its ATMs, and it gives Cardtronics more opportunity to upgrade Merchant-Owned ATMs (which, without the Amendment, would **_never_** be upgraded).  The primary effect of the Amendment is to delay the liquidated damages for missing a deadline, —but any damages would be paid to the Commonwealth and the NFB, not to Class Members, so Class Members have at most

only an inchoate and general interest in the liquidated damages, rather than a direct interest.  Other aspects of the Amendment, such as providing a defined and extended period of time for the NFB to test ATMs, indirectly benefit Class Members.  While Class Members unquestionably have a broad interest in the Amendment, no one could reasonably say their rights are "materially" disadvantaged by the Amendment.

For the reasons explained above, the Amendment does not directly harm any Class Member's interests, but provides additional benefits to them.  The Court should also note that, when the Court ordered class-wide notice the past two times in this litigation, only one Class Member filed an objection, without explanation—so no reason exists to believe that any Class Member could or would have any reason to object to the Amendment.  Under these circumstances, the Court should conclude notice is not required.  *E.g.*, *id.* (affirming lower court's decision not to require notice to class, including because, "there have never been complaints from putative class members"); *Harris v. Graddick*, 615 F. Supp. 239, 244 (M.D. Ala. 1985) (declining to require notice of the proposed amendment where "the interests of the plaintiff class are in no way impaired by the amendment").

## **CONCLUSION**

For all of the reasons set forth above, the Parties respectfully request that this Court enter an Order approving the Amendment, and declining to require that any notice be provided to the Class.

Respectfully submitted,

By the Parties:

PLAINTIFF COMMONWEALTH OF
MASSACHUSETTS, ATTORNEY
GENERAL MAURA HEALEY

DEFENDANT CARDTRONICS, INC.

*/s/ Genevieve C. Nadeau*
Genevieve C. Nadeau, BBO # 677566
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 727-2200
genevieve.nadeau@state.ma.us

*/s/ Douglas P. Lobel*
Douglas P. Lobel (admitted *pro hac vice*)
David A. Vogel (admitted *pro hac vice*)
COOLEY LLP
One Freedom Square|Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190
(703) 720-7000
dlobel@cooley.com
dvogel@cooley.com

PLAINTIFFS NATIONAL FEDERATION
OF THE BLIND AND THE INDIVIDUAL
PLAINTIFFS

*/s/ Christine M. Netski*
Christine M. Netski, BBO #546936
Anthony M. Doniger, BBO #129420
Sugarman, Rogers, Barshak &
      Cohen, P.C.
101 Merrimac Street
Boston, MA 02114-4737
(617) 227-3030
netski@srbc.com
doniger@srbc.com

*/s/ Sharon Krevor-Weisbaum*
Sharon Krevor-Weisbaum (admitted
 *pro hac vice*)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
(410) 962-1030
skw@browngold.com

*/s/ Timothy P. Fox*
Timothy P. Fox (admitted *pro hac vice*)
Amy F. Robertson (admitted *pro hac vice*)
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
tfox@creeclaw.org
arobertson@creeclaw.org

DATED:        October 24, 2017

## <u>CERTIFICATE OF SERVICE</u>

I, Douglas P. Lobel, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 24, 2017.

_/s/ Douglas P. Lobel_
Douglas P. Lobel

4838-6816-2384, v. 1

148877442